Juan, Francisco y Rosario Bianchi, demandantes y apelados, *v.* Estela Bianchi Rosafa, demandada y apelante.

No. 5480.—*Sometido:* Enero 12, 1931. *Resuelto:* Febrero 5, 1931.

J. Sabater, abogado del apelante; *Miguel A. García Méndez,* abogado de los apelados.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

Después de vencido un contrato de arrendamiento por

quince años sobre varios predios de terreno situados en diferentes municipios, Juan, Francisco y Rosario Bianchi incoaron dos procedimientos de desahucio ante distintas cortes municipales. Obtuvieron entonces de la corte de distrito un *injunction pendente lite* ordenando a la demandada Estela Bianchi Rosafa que se abstuviera de intervenir con los peticionarios en el ejercicio de su derecho de apoderarse nuevamente de las fincas arrendadas, de obstruir la entrega de los predios cedidos en arrendamiento a Russell & Company a virtud de un nuevo contrato, y de perturbar a la nueva arrendataria en sus labores preparatorias para la próxima cosecha.

Estela Bianchi apela y dice que la corte de distrito no tenía facultad para expedir el *injunction pendente lite,* toda vez que las cortes municipales carecían de jurisdicción en el procedimiento de desahucio.

■ Estela Bianchi era (por lo menos nominalmente) una subarrendataria. En 1915 las fincas en cuestión pertenecían a los Sucesores de Bianchi, quienes las dieron en arrendamiento a Enrique O. Green, arrendador de la apelante. Posteriormente, al disolverse la razón social Sucesores de Bianchi, el título de estas fincas pasó a los peticionarios, hasta entonces miembros de la firma.

El artículo 1474 del Código Civil lee como sigue:

"El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria.

"Si el comprador usare de este derecho, el arrendatario podrá exigir que se le deje recoger los frutos de la cosecha que corresponda al año agrícola corriente y que el vendedor le indemnice los daños y perjuicios que se le causen."

Cuando se trata de una posesión en precario, la acción de desahucio debe entablarse en la corte de distrito. El argumento es que al disolverse la firma Sucesores de Bianchi la demandada se convirtió en una poseedora en precario. Asume que cuando el título de los predios arrendados pasó a

los miembros individuales de la extinta firma, estos nuevos dueños eran ''compradores'' dentro del significado del artículo 1474. No necesitamos detenernos a considerar los méritos de esta teoría.

Podría admitirse, sin resolverlo, que al adquirir los bienes arrendados los peticionarios pudieron haber optado por terminar el contrato de arrendamiento. Si ellos tenían tal opción, no trataron de ejercerla. Por el contrario, la subarrendataria, año tras año después de disolverse la firma, pagó los cánones de arrendamiento directamente a los peticionarios. De ahí se desprende que ahora ella no está en posición de alegar que el contrato de arrendamiento cesó al disolverse la sociedad.

La firma Sucesores de Bianchi fué disuelta en 1925. Tanto el contrato de arriendo como el de subarriendo vencieron simultáneamente en agosto 15, 1930. Los peticionarios, como dueños de las fincas arrendadas, eran los únicos posibles demandantes en una acción de desahucio. La subarrendataria, al continuar reteniendo la finca después de vencido el arrendamiento, no era una poseedora en precario en un sentido tal que se confiriera jurisdicción exclusiva a la corte de distrito. *Cerra* v. *González,* 29 D.P.R. 289; *Roger* v. *López Acosta,* 28 D.P.R. 563.

Otra contención es que la corte de distrito erró al conceder el *injunction,* a causa de una alegada disputa respecto a los linderos, identificación de las fincas y título. No hallamos que el título de los demandantes haya sido seriamente impugnado. La apelante no es la dueña de ninguna de las propiedades contiguas. Una de estas propiedades le fué comprada en 1918. Fuera de esto, no se ha demostrado que ella tenga interés en cualquiera confusión que pudiese haber sobre los lindes, ni en la alegada dificultad de identificar. En lo que a ella concierne, el error, de haberse cometido alguno, fué inofensivo.

La última contención es que el juez de distrito erró

en su conclusión en torno a los daños irreparables y a la multiplicidad de procedimientos. Creemos que la prueba de los demandantes fué suficiente en ambos respectos.

Por regla general, no procede un *injunction* para transferir la posesión de terrenos, pero hay ciertas excepciones bien consagradas. 32 C. J. 134, sec. 178; íd. 131, 132, secciones 173, 174. En esta jurisdicción, donde el interdicto para recobrar del Derecho Romano ha sido instaurado por disposición legislativa (Leyes de 1917, tomo II, pág. 221) la noción de un *injunction* mandatorio para recobrar la posesión no es una novedad. El artículo 1431 del Código Civil taxativamente dispone que: "El arrendatario saliente debe permitir al entrante el uso del local y demás medios necesarios para las labores preparatorias del año siguiente; y recíprocamente, el entrante tiene obligación de permitir al colono saliente lo necesario para la recolección y aprovechamiento de los frutos, todo con arreglo a la costumbre del pueblo." En este caso no se ha suscitado cuestión alguna de frutos pendientes.

La corte de distrito resolvió que éste era un caso excepcional. Estamos conformes.

El *injunction* que se concedió fué una medida temporal, provisional, ínterin se fallara definitivamente la acción de desahucio, o hasta nueva orden de la corte. La demandada no estaba en posesión a virtud de título alguno para ello. Ella negó que estuviera en posesión en absoluto, y no alegó derecho alguno a la posesión. Ella no tiene el más mínimo interés, ni como subarrendataria ni como dueña de cualquier predio contiguo, en la alegada confusión de linderos o dificultad de identificación. La cabida total de las propiedades envueltas en los procedimientos de desahucio no pasaba de ochenta y cinco cuerdas. El canon anual ascendía a $550. El nuevo arrendamiento de éstas y otras propiedades a Russell & Company era por $75,000 anuales. Al tiempo de otorgarse ese contrato, el precio del azúcar era $4.75. Para la

época del juicio, era $3. Russell & Company habían amenazado con entablar pleito para la rescisión de ese contrato si no se les ponía en posesión inmediata de las ochenta y cinco cuerdas. En caso de tal rescisión, no había perspectiva alguna de hallar un nuevo arrendatario que pagara un tipo similar al convenido por Russell & Company, ni un solo arrendatario que no fuera Russell & Company que pudiera hacerse cargo de la totalidad de los bienes arrendados. La demandada carecía de un activo visible. A los peticionarios se les exigió la prestación de una fianza por cinco mil dólares como condición precedente a la expedición del *injunction*. Esa era una garantía amplia para cualquier daño o perjuicio que pudiese irrogarse a la demandada. La regla general ya consignada no quiere decir que una corte de equidad esté imposibilitada de impedir una multiplicidad de pleitos o de proteger a un arrendador de daños irreparables mediante la concesión de un *injunction* provisional, aun cuando el efecto de ese auto sea desalojar a un arrendatario que retenga la finca después de expirar su contrato sin que tenga ningún título o vestigio de derecho a la posesión de los bienes arrendados, hasta tanto se dirima la acción de desahucio.

*Debe confirmarse la orden apelada.*