Rafael Vélez Maldonado, demandante y apelado, *v.* Andrés Luis San Miguel, demandado y apelante.

Núm. 9609.—*Sometido:* Marzo 8, 1948. *Resuelto:* Abril 9, 1948.

576

*E. Martínez Rivera* y *Luis Blanco Lugo,* abogados del apelante; *Diego O. Marrero,* abogado del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El 14 de septiembre de 1946 el demandante compró una casa con intenciones de vivirla. El 1 de octubre de 1946 obtuvo de la OAP un certificado, requerido entonces por la ley y los reglamentos Federales, que lo autorizaba a instituir de conformidad con la ley local, no antes del 23 de enero de 1947, un procedimiento para lanzar al demandado, inquilino del dueño anterior. El 24 de marzo de 1947 el demandante radicó ante la corte de distrito una acción de desahucio en precario para lanzar al demandado. Ésta es una apelación establecida por el demandado contra sentencia a favor del demandante, basándose en que la corte de distrito carecía de jurisdicción.

A tenor con el artículo 1461 del Código Civil, al comprar la casa el demandante tenía derecho a dar por terminado el arrendamiento del demandado con el dueño anterior. Bajo el artículo 622 del Código de Enjuiciamiento Civil, en tal caso la jurisdicción corresponde a la corte de distrito, con la excepción de que es la corte municipal la que tiene jurisdicción si el comprador y el demandado celebran un nuevo contrato de arrendamiento en que el alquiler no exceda de $1,000 al año. *Miranda* v. *Jarabo,* 64 D.P.R. 898.

Alega el apelante que en este caso el demandante y el demandado otorgaron dicho nuevo contrato con un al-

quiler de $22 mensuales, y que en consecuencia la corte municipal, y no la de distrito, era la que tenía jurisdicción. Esta contención está basada en el hecho de que para los meses de agosto a noviembre de 1946 el demandado le envió sendos cheques al demandante por $22, que especificaban eran para el "pago de rentas," y el demandante le expidió los recibos correspondientes indicando que eran por "alquiler casa en Alameda Bo. núm. 30".

Para la época aquí envuelta un detentador no podía ser desahuciado sin un certificado de la OAP. *Sais* v. *Gorbea,* 66 D.P.R. 35. En su consecuencia, entre el 14 de septiembre de 1946 y el 23 de enero de 1947, el demandante, por fíat de la Ley Federal, no podía desahuciar al demandado. Pero esto no alteró el *status* de éste como un detentador mientras estaba en posesión hasta que entró en vigor el certificado de la OAP. "Debido a las condiciones de emergencia creadas por la guerra, los Gobiernos Federal e insular han asumido la tarea de proteger por fíat legislativo la posesión de las viviendas y exigir ciertas condiciones a ser cumplidas, antes de que se pueda terminar tal posesión. Pero nada encontramos en estas leyes en el sentido de crear relaciones contractuales privadas entre partes que nunca las han convenido." *Miranda* v. *Jarabo,* supra, págs. 900, 901.

Manresa, Comentarios al Código Civil, 4ta. ed., Vol. 10, pág. 575, indica que el nuevo dueño puede "con actos explícitos" celebrar un contrato con el inquilino del dueño anterior para la continuación del viejo arrendamiento. Pero aquí no encontramos tales actos explícitos del demandante. Por el contrario, éste hizo constar claramente que deseaba dar por terminado el arrendamiento. Es cierto que aceptó dinero como "alquiler". Pero esto por sí solo no es decisivo aquí en cuanto a la cuestión de si las partes celebraron un nuevo contrato de arrendamiento. El llamado "alquiler" pudo de hecho constituir alquiler bajo un nuevo

contrato o pudo haber sido compensación por el uso de la casa mientras el demandado la seguía ocupando.

Al tratar de determinar si las partes celebraron un nuevo contrato, debemos recordar que en virtud de la Ley Federal el demandante no podía por varios meses lanzar al demandado. Durante dicho período, mientras esperaba que entrara en vigor el certificado de evicción, él podía cobrar el alquiler propiamente dicho. *Escudero* v. *Corte,* 65 D.P.R. 574. De la misma manera, si para dicho período no existía contrato de arrendamiento, el demandante tenía derecho a que el demandado lo compensara por el uso de la propiedad, y podía demandarlo en cobro de dicha compensación. *Ball* v. *Vilá,* 67 D.P.R. 415. Toda vez que el demandado era responsable por el uso de la propiedad, la compensación por ello podía cobrársele—bien por pago voluntario o por pleito—durante el período de la posesión. No hay razón en derecho o en lógica que nos obligue a resolver que el cobro de esta deuda, que se admite se debía, tenía que suspenderse hasta después que se lanzara al demandado, época para la cual su cobro podría ser bastante incierto.

No tenemos que determinar si la fianza que el demandado probablemente tuvo que prestar con el fin de apelar en este caso, cubriría la compensación por el uso de la propiedad desde octubre a noviembre de 1946, si el demandado no la hubiera pagado voluntariamente. *Cf. Pratts* v. *Corte,* 66 D.P.R. 3; *Vivas* v. *Petrilli,* 66 D.P.R. 653. Aun si supusiéramos, sin decidirlo, que la fianza era aplicable a este período, el cumplimiento por el demandado del requisito de prestar una fianza nada tiene que ver con que el demandante por un "acto explícito" haya continuado el arrendamiento anterior o haya celebrado un nuevo arrendamiento. Bajo las circunstancias de este caso, la fianza, a lo sumo, garantizó el pago de la compensación por el uso. El aceptar dinero por el uso, en vez de esperar a proceder contra la fianza, no fué

un "acto explícito" del demandante, trayendo como resultado un contrato entre él y el demandado.

Creemos que el razonamiento empleado en *López* v. *Tribunal de Distrito,* 67 D.P.R. 176, es de aplicación a este caso. En dicho caso el Pueblo radicó demanda para expropiar cierta propiedad inmueble. El demandado, que estaba en posesión, convino con el Pueblo en desalojar la propiedad en cierta fecha, y entre tanto pagar cierta suma como "alquiler" por la misma. El demandado no desalojó la propiedad en la fecha convenida, y el Pueblo radicó una moción dentro del procedimiento de expropiación solicitando una orden de lanzamiento contra el demandado. Éste se opuso por el fundamento de que la aceptación de "alquiler" de él había creado la relación de propietario e inquilino entre ellos, y que el demandado por tanto no podía ser lanzado dentro del procedimiento de expropiación sino únicamente mediante un procedimiento independiente de desahucio.

Nuestra ley de expropiación confiere autoridad a la corte de distrito para fijar (1) el período dentro del cual desalojar la propiedad y (2) el importe de la compensación a pagarse al Estado por el uso durante dicho período. Resolvimos en el caso de *López* que el convenio de las partes sobre estas dos cuestiones sustituyó una orden a ese efecto. Y dijimos a la pág. 179:

"Si el inquilino no paga canon y rehusa mudarse de una propiedad expropiada, ciertamente no puede alegarse que su lanzamiento debe regirse por un recurso de desahucio en vez de dentro de la expropiación forzosa. El hecho de que se exija del inquilino el pago de canon durante este período—y ciertamente él no debe tener derecho a disfrutar de la propiedad gratis—no altera su *status.* En este caso la Autoridad ejerció cuidado desde el comienzo para recalcar que ella no estaba arrendando la propiedad y que sí únicamente estaba permitiendo que el peticionario permaneciera en la misma hasta que pudiera abandonarla convenientemente. A moción de El Pueblo la corte habría dictado una orden al mismo efecto, incluyendo un requisito para que el peticionario pagara por tal uso de la propiedad. El hecho de que las partes llegaran a un acuerdo

y que por tanto fuera innecesaria una orden de la corte, no cambia la naturaleza de sus relaciones. El canon no fué para el uso bajo un contrato de arrendamiento, pero sí solamente para compensar a El Pueblo por el uso de la propiedad mientras éste esperaba por su entrega dentro del procedimiento de expropiación."

Es cierto que en el caso de *López* la corte tenía autoridad para ordenar el pago por el uso sin que existiera un nuevo contrato entre las partes. Pero eso no impediría al Pueblo, de así elegirlo, celebrar un nuevo arrendamiento con el inquilino del anterior dueño. El "alquiler" pagado podía en consecuencia ser por el uso o en virtud de un nuevo arrendamiento, dependiendo del convenio entre las partes. Considerado en esta forma, el principio envuelto en el caso de *López* no es diferente a aquél envuelto en éste. En el caso de *López* si el dinero se pagó por el uso de la propiedad mientras se aguardaba la entrega de la misma, la orden de lanzamiento podía dictarse dentro del procedimiento de expropiación; por otro lado, si se pagó como alquiler bajo un nuevo arrendamiento, era imperativo un recurso de desahucio independiente. En la misma forma, aquí el pago de compensación por el uso no privó a la corte de distrito de jurisdicción, mientras que el pago bajo un nuevo arrendamiento de "alquiler" no mayor de $1,000 al año, hubiera conferido jurisdicción a la corte municipal. Y en ambos casos el llamar "alquiler" al dinero pagado, no es decisivo por sí solo. Más bien la cuestión es si hubo algún consentimiento del demandante en cuanto a un nuevo contrato.

Bajo el razonamiento del caso de *López,* éste es un caso *a fortiori.* Aquí el demandante no podía elegir. La Ley Federal lo obligaba a permitirle al demandado que permaneciera en la propiedad durante los meses de octubre y noviembre. En el caso de *López,* si bien la corte tenía autoridad para dictar una orden, como cuestión de hecho la demandante voluntariamente permitió al demandado que per-

maneciera en la propiedad por un término fijo después de la expropiación. En ambos casos no hay duda que el demandante tenía derecho a que el demandado lo compensara por el uso de la propiedad. En ambos casos las partes le dieron el nombre de "alquiler" al dinero pagado al demandado. En el caso de *López* se resolvió que este nombre no era decisivo. No podemos resolver que en este caso es decisivo. Es más, en el caso de *Ball* permitimos a un propietario recobrar por el uso después del desahucio, no obstante las alegaciones de su demanda de que le suma reclamada era por "alquiler". Si las partes no vienen obligadas por los inadecuados nombres contenidos en las alegaciones formales redactadas por sus abogados, *a fortiori* sus propios nombres informales e inadecuados en recibos y cheques no debieran, por sí solos, obligarlos.

En el caso de *López,* no se hizo responsable a la demandante por haber llamado erróneamente "alquiler" a la compensación por el uso de la propiedad, en vista del hecho de que "ejerció cuidado desde el comienzo para recalcar que ella no estaba arrendando la propiedad y que sí únicamente estaba permitiendo que el [inquilino] . . . permaneciera en la misma hasta que pudiera abandonarla convenientemente." En el presente caso el demandante también llamó erróneamente "alquiler" al dinero aceptado por el uso de su propiedad; y en igual forma fué tan cuidadoso como la demandante en el caso de *López* en demostrar mediante todas sus actuaciones que daba por terminado el anterior arrendamiento y que no sustituía éste por uno nuevo. Tanto en el caso de *López* como en el presente parece claro que bajo todas las circunstancias concurrentes las partes no tuvieron la intención de otorgar un nuevo contrato, sino más bien que el dinero pagado por el demandado al demandante fuera compensación por el uso de la propiedad.

El demandante en el presente caso, al adquirir la propiedad, notificó al demandado su propósito de recobrar la

posesión de la misma. Consistente en todo momento con este propósito, obtuvo de la OAP el certificado de evicción y oportunamente radicó la demanda para lanzar al demandado. Éstos fueron actos explícitos que indicaban que no iba a otorgarse contrato nuevo alguno. Convenimos en que si el demandante no hubiera dado ninguno de estos pasos y se hubiera limitado a aceptar dinero del demandado que ambas partes calificaron de "alquiler", entonces sí que hubiera surgido un nuevo contrato entre el demandante y el demandado. Pero las partes efectuaron estos otros pasos. Y ellos demuestran inequívocamente que las partes no tuvieron por miras un nuevo contrato. Al contrario, mientras el demandante esperaba tomar posesión de su propiedad, aceptó dinero al cual tenía derecho por el uso de ella. No vemos diferencia alguna entre la aceptación de tal dinero y el recibir el demandante después de sentencia firme el dinero consignado en corte como "alquiler". A pesar del hecho de que este dinero se consigna como "alquiler", a nadie se le ha ocurrido oponerse a que un demandante lo reciba por el fundamento de que no tenía derecho a recibir "alquiler" de una persona que no era su inquilino.

De igual manera el hecho de que la compensación por el uso sea la misma que el importe del alquiler que pagaba al anterior dueño, no creó un contrato entre el demandante y el demandado. Sobre este particular, es pertinente nuestro lenguaje en *Ball* v. *Vilá,* supra, págs. 417-8: "Concedemos que el pacto de pagar $80 mensuales por la casa terminó con el contrato el 8 de marzo de 1944, y que lo que el apelado puede recobrar. es el valor razonable del uso de la casa. Pero las partes no sometieron evidencia alguna tendiente a probar que la cantidad de $80 mensuales no fuera el valor razonable de tal uso. Resultando de las alegaciones de una y otra parte que ésa era la cantidad que la apelante había venido pagando a virtud del contrato de arrendamiento con

el anterior dueño primero y con el apelado después, la corte estuvo justificada en concluir que $80 mensuales era el valor razonable del uso de la casa."

Por opinión y sentencia de fecha 22 de enero de 1948, este Tribunal revocó la sentencia de la corte de distrito en el presente caso. Dicha opinión se apoyó en el lenguaje contenido en varios de nuestros casos indicativos de que la mera aceptación de dinero, al que las partes dan el nombre de "alquiler", trae por resultado, sin más, un nuevo contrato de arrendamiento entre el comprador de una casa y y el arrendatario del dueño anterior, no obstante la existencia de otras consideraciones en contrario. Véanse, por ejemplo, *Flores* v. *Delgado*, 34 D.P.R. 778, 779; *Cuesta* v. *Ortiz*, 29 D.P.R. 494; *Cerra* v. *González*, 29 D.P.R. 289. Por estar convencidos de que este lenguaje es erróneo, no lo seguiremos en el futuro.

No nos detenemos a determinar si los casos de *Morales* v. *Martínez et ux*, 40 D.P.R. 724, y *Del Toro* v. *Juncos Central*, 29 D.P.R. 23 (véase también 3 Williston, sec. 687, pág. 1981), son de aplicación y fueron resueltos correctamente. Ya tendremos tiempo de sobra para considerar esta cuestión cuando surja un caso adecuado. Entretanto, sólo se nos ocurren dos argumentos. El primero es que en esos casos ya existía un contrato entre las partes; y la controversia se reducía a si después de haber el inquilino infringido el contrato, al haber aceptado el propietario dinero en alquiler—no dinero por el uso, sino alquiler en el concepto técnico—renunció con ello a la infracción. Aquí no existía contrato anterior entre las partes. Por el contrario, se nos pide que busquemos la creación de un contrato en virtud del solo acto de pagar dinero, no como alquiler en el concepto técnico, sino por el uso de la propiedad, a pesar de existir otros hechos que claramente demuestran que no existía contrato entre las partes. El segundo es que aun cuando existiera un contrato, quizá dichos dos casos no debieran ser

de aplicación, y la doctrina debiera ser que la aceptación de dinero no conlleva la renuncia a la infracción anterior, siempre que se haga constar claramente que el dinero se acepta como compensación por el uso, y no como alquiler. Este último punto se basaría en el argumento de que existiendo o no infracción alguna, en última instancia un propietario tiene derecho a compensación por el uso de su propiedad; y no se llegaría a fin práctico alguno obligando a tal propietario a esperar cobrar por dicho uso hasta después del lanzamiento, cuando el cobro puede ser difícil o imposible. Repetimos que dejamos esta cuestion sin resolver. En verdad, este párrafo no estaría en esta opinión, a no ser por el hecho de que en la opinión disidente se discuten los casos de *Morales* y *Del Toro*.

Es cierto, según indica la opinión disidente, que la única cuestión envuelta en este caso es la jurisdicción de la corte de distrito. Pero la importancia de nuestra decisión descansa precisamente en el *ratio decidendi* de esta opinión; es decir, la aceptación de dinero por el uso de propiedad inmueble no crea por sí solo un nuevo contrato de arrendamiento entre el comprador de una casa y el inquilino del dueño anterior cuando todas las otras circunstancias nos llevan a un resultado contrario.

Convenimos con la opinión disidente al aplicar a las circunstancias de este caso el comentario del caso de *Morales* v. *Martínez et ux,* supra, págs. 728-9, al efecto de que las consecuencias legales emanan de lo que uno hace, no de lo que dice. Pero creemos que aquí las partes dijeron que se cobraba ''alquiler'', mientras que todo lo que hicieron indicaba que se daba por terminado el contrato anterior, se rehusaba la celebración de un nuevo arrendamiento, y se aceptaba la compensación meramente por el uso de la propiedad y no como alquiler a tenor con un nuevo contrato.

Por los motivos antes consignados, resolvemos (1) que el demandante no celebró contrato alguno con el demandado;

(2) que en su consecuencia el demandado era un detentador; y (3) por consiguiente, que el tribunal de distrito resolvió correctamente que el caso fué radicado debidamente ante él.

*Dadas estas conclusiones, se declarará con lugar la moción de reconsideración, se dejarán sin efecto nuestra sentencia y opinión de fecha 22 de enero de 1948 a virtud de las cuales se revocó al tribunal inferior, y la sentencia por éste dictada será confirmada.*

Opinión disidente del Juez Asociado Sr. Todd, Jr., con la cual concurre el Juez Asociado Sr. Marrero.

En la demanda sobre "desahucio por detentación", radicada por Rafael Vélez Maldonado en el Tribunal del Distrito Judicial de San Juan, se alegó, en síntesis, que él adquirió por compra una casa en Santurce con el fin de vivirla con su familia; que notificó al demandado, arrendatario del anterior dueño, que necesitaba la casa para dicho fin, de buena fe, y daba por terminado el contrato de arrendamiento y lo requería para que desocupara la casa a más tardar el 23 de enero de 1947, de acuerdo con el certificado de evicción que obtuvo de la División de Inquilinato de la Oficina de Administración de Precios de Puerto Rico, y que no obstante dicho requerimiento el demandado no desocupó la casa.

El demandado en su contestación a la demanda alegó, especialmente, que el demandante reconoció y renovó el contrato de arrendamiento anterior, al recibir y aceptar el pago de los cánones de arrendamiento durante los meses de octubre y noviembre de 1946 y siendo dicho canon el de $22 mensuales, el tribunal carecía de jurisdicción, ya que los cánones computados por una anualidad no exeden de $1,000.

El tribunal inferior, al declarar con lugar la demanda, resolvió que si de acuerdo con lo resuelto en *Escudero* v. *Corte,* 65 D.P.R. 574, nada hay en la Ley de Emergencia para el Control de Precios ni en el Reglamento para su eje-

cución, "que impida al dueño cobrar los cánones del arrendamiento hasta el momento en que lo da por terminado e inicia la acción de desahucio después de la fecha efectiva del Certificado", el hecho de que el dueño de una propiedad ocupada por un inquilino del anterior dueño cobre los cánones que se venzan mientras llega la fecha de hacer efectivo su certificado, no tiene el alcance de crear un nuevo contrato entre las partes ni de quitarle al inquilino su carácter de detentador, ya que, para que exista un contrato debe mediar el consentimiento de las partes. Citó, además, dicho tribunal, el caso de *Miranda v. Jarabo,* 64 D.P.R. 898, en el que se resolvió que la jurisdicción para conocer de la acción instada por el comprador de una propiedad arrendada, para desahuciar al inquilino del anterior dueño, corresponde a la corte de distrito.

El único error señalado por el apelante es al efecto de que el tribunal inferior erró al resolver que tenía jurisdicción para conocer del caso.

Si bien es cierto que en el caso de *Escudero v. Corte,* supra, resolvimos que nada hay en la ley *"Emergency Price Control Act"* ni en el Reglamento aprobado para su ejecución que impida al comprador de una casa arrendada por el anterior dueño cobrar los cánones de arrendamiento hasta el momento en que lo da por terminado y entonces inicia la acción de desahucio después de la fecha efectiva del certificado expedido por la División de Inquilinato, dicho caso no es autoridad para resolver que la jurisdición para conocer de la acción de desahucio corresponde siempre a las cortes de distrito. Por el contrario, los hechos del caso de *Escudero* demuestran que la acción se inició precisamente en la Corte Municipal de San Juan.

Tampoco el caso de *Miranda v. Jarabo,* supra, resuelve expresamente que *cuando se cobran dichos cánones de arrendamiento* por el adquirente de una casa arrendada, la jurisdicción en el caso de desahucio iniciado por el nuevo dueño

contra el arrendatario corresponde a las cortes de distrito.
Como cuestión de hecho en el caso de *Miranda* v. *Jarabo,* supra, los cánones de arrendamiento no fueron cobrados. Sostenía el apelante en dicho caso, que él no era un detentador de la propiedad, ya que ocupaba la casa en virtud de un contrato de arrendamiento con consideración menor de mil dólares al año y que por tanto la jurisdicción correspondía a la corte municipal y que en todo caso, la Ley núm. 14 de 1941 (Sesión Extraordinaria, pág. 45) y los reglamentos de la O.A.P. tenían el efecto de prorrogar su contrato de arrendamiento. Ambas cuestiones fueron resueltas en contra del apelante. La primera, porque, de acuerdo con la jurisprudencia de esta Corte, cuando el comprador da por terminado el contrato de arrendamiento que el inquilino tenía con el dueño anterior y entabla una acción de desahucio, la jurisdicción pertenece a la corte de distrito, y la segunda, porque la ley insular y los reglamentos federales no tienen por miras crear relaciones contractuales privadas.

El caso de autos es distinto. La cuestión que plantea el apelante es si a pesar de haber el demandante dado por terminado el contrato de arrendamiento que el demandado tenía con el anterior dueño, el hecho de haberle continuado cobrando los cánones de arrendamiento, equivale a un reconocimiento o renovación de dicho contrato en tal forma que el demandado no pueda considerarse como un detentador y corresponder, por tanto, la jurisdicción de la acción de desahucio, a la corte municipal por ser el canon anual menor de mil dólares. Los hechos, admitidos por las partes, demuestran que el demandado le pagó al demandante los cánones de arrendamiento hasta el mes de noviembre de 1946 y que éste los aceptó, según dijo, porque en la Oficina de la O.A.P. le dijeron que podía hacerlo. El canon correspondiente al mes de diciembre de 1946 no fué satisfecho y la acción de desahucio se inició el 23 de enero de 1947, fecha efectiva del certificado de evicción.

¿Qué efecto legal tuvo, si alguno, la aceptación por el demandante de los cánones de arrendamiento con posterioridad a la fecha en que adquirió la casa objeto del desahucio? Hemos resuelto, en un caso similar, que "Lo esencial para la demandada fué intentar demostrar que una vez que dicha propiedad pasó al demandante por título de compra, *él asumió la continuación del arrendamiento, cobrando un canon de arrendamiento a la demandada.*" (Bastardillas nuestras.) *Flores* v. *Delgado*, 34 D.P.R. 778, 779. En dicho caso, por no haberse probado ese hecho, se resolvió que la posesión de la demandada era equivalente al disfrute en precario y que la corte con jurisdicción era la de distrito, cuestión ésta reiteradas veces resuelta por este Tribunal al interpretar el artículo 1461 del Código Civil (Ed. 1930).(¹) *Sosa* v. *Río Grande Arícola Co., Ltd.*, 17 D.P.R. 1149; *Angleró* v. *Fernández,* 31 D.P.R. 262; *Cuesta* v. *Ortiz*, 29 D.P.R. 494; *Miranda* v. *Jarabo,* supra.,

Comentando Manresa el artículo 1571 del Código Civil Español, (equivalente al artículo 1461 del nuestro), dice:

"Pero es requisito indispensable, según la jurisprudencia para la aplicación del artículo 1.571, que el comprador manifieste su voluntad de no acatar el contrato concertado por su causante en el dominio, y en su consecuencia, *cuando en vez de adoptar esta actitud el nuevo dueño del predio, revela con actos explícitos su intención de que el repetido contrato continúe en vigor, no puede después ejercitar, por la causa especial fijada en dicho precepto,* la acción de desahucio, salvo la concurrencia de alguna de las enumeradas en el artículo 1.569 del propio Código y sus concordantes, en la Ley de Enjuiciamiento Civil (sentencia de 28 de febrero de 1913). (Bastardillas nuestras.)

El aceptar el demandante el pago de varias mensualidades del canon de arrendamiento(²) equivalió a continuar en

---

(¹)El primer párrafo del artículo 1461 dispone que: "El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria."

(²)En los recibos se hizo constar expresamente que los $22 mensuales se recibían por el "alquiler de la casa en Alameda Bo. núm. 30."

vigor el contrato, no obstante su anterior notificación dándolo por terminado. Como se dijo en el caso de *Flores* v. *Delgado*, supra, él "asumió la continuación del arrendamiento." Con esta actuación del demandante el efecto de la notificación anterior quedó limitado a dar por terminado el contrato, no cuando compró la propiedad, sino a la fecha efectiva del certificado.

Podría argüirse que, no habiéndose satisfecho el canon correspondiente al mes de diciembre de 1946 e iniciada la acción el 23 de enero de 1947, el demandado era un detentador de la casa. Hemos resuelto lo contrario. Habiendo asumido el demandante la continuación del arrendamiento al aceptar el pago de los cánones y expedir los recibos por el alquiler de la casa, al no pagarse el canon del mes de diciembre, no hay duda alguna que el demandante tenía derecho a desahuciar al demandado, no porque éste ocupara la casa en precario, sino por incumplimiento del contrato, debiendo el demandante probar en dicha acción que necesitaba ocupar, de buena fe, la casa para residir en ella con su familia, de acuerdo con el certificado de evicción.

En el caso de *Cerra* v. *González*, 29 D.P.R. 289, 291, resolvimos que cuando un arrendatario continúa ocupando la casa después de expirado el plazo del arrendamiento "Claramente resulta que ocupa la casa sin derecho alguno y en contra de la voluntad del propietario, pero no precariamente. Y siendo esto así, la calificación de precario que, según la jurisprudencia determina la jurisdicción original de las cortes de distrito en estos casos, no puede aplicarse aquí." Al mismo efecto *Padua* v. *Corte Municipal*, 55 D.P.R. 810.

El certificado de evicción expedido por la O.A.P., por sus propios términos autorizó al demandante a instituir la acción de desahucio, con el propósito de ocupar la casa como su residencia, "de acuerdo con los requisitos de la ley lo-

cal'', siendo ésta y no el certificado, la que determina las cortes con jurisdicción competente para conocer de dichas acciones.

Hasta aquí la opinión que originalmente escribimos, a nombre de una mayoría del Tribunal, el 22 de enero de 1948 y que ahora se deja sin efecto, en reconsideración, por otra mayoría del Tribunal. Creemos necesario expresar nuestros puntos de vista sobre algunos de los fundamentos de la nueva opinión.

En primer término consideramos que el caso de *López* v. *Tribunal de Distrito*, 67 D.P.R. 176, es claramente distinguible del de autos. Si no lo fuera, creemos que fué erróneamente resuelto y debería revocarse. . Dicho caso se resolvió a base de la sección 5(*a*) de la Ley sobre Expropiación Forzosa que expresamente concede a la corte facultad para fijar el término dentro del cual y las condiciones bajo las cuales las personas en posesión de la propiedad expropiada deben entregarla el expropiante, y dijimos que el hecho de haberse puesto las partes de acuerdo en cuanto a dichas condiciones, entre ellas el pago por el uso de la propiedad, no equivalía a que se hubiera celebrado un contrato de arrendamiento, ya que dicho ''convenio ocupó el lugar de la orden de la corte y estaba por tanto relacionado con y en virtud del procedimiento de expropiación forzosa, que permaneció abierto hasta tanto El Pueblo tomara posesión de la propiedad.'' Y expresamente dimos énfasis al hecho de que ''En este caso la autoridad ejerció cuidado desde el comienzo para recalcar que ella no estaba arrendando la propiedad y que sí únicamente estaba permitiendo que el peticionario permaneciera en la misma hasta que la abandonara convenientemente.''

De manera que en el caso de *López,* supra, era la propia Ley de Expropiación Forzosa la que autorizaba a la corte a fijar los términos y las condiciones bajo las cuales el inquilino podía continuar disfrutando de la propiedad y ha-

biéndolo hecho las partes se hizo innecesaria la orden de la corte, pero ese hecho, dijimos: "No cambia la naturaleza de sus relaciones".

En el caso de autos, ni el certificado de la O.A.P., ni la Ley de Inquilinato, conceden facultad alguna a la corte para fijar los términos y condiciones para la entrega de la propiedad y hemos resuelto que tampoco tienen por miras crear relaciones contractuales privadas. *Miranda* v. *Jarabo,* supra. Pero las partes, por sus actuaciones, sí crearon una nueva relación contractual al pagar el demandado los cánones de arrendamiento y al expedir el demandante los recibos correspondientes haciendo constar que eran por el alquiler de la casa. Si esto último no constituye uno de los "actos explícitos" a que se refiere Manresa, supra, no sabemos cómo calificarlo. No se trata de una designación (*label*) errónea o equivocada dada por el demandante. En todos los recibos expedidos por él al demandado hizo constar que eran por "el alquiler de la casa Alameda Bo. núm. 30", y aceptó los cheques del demandado que expresamente decían que eran en "pago de rentas". Las palabras "alquiler" y "renta" tienen un significado bien conocido, la primera es "El precio en que se alquila una cosa" y la segunda "Lo que paga en dinero o en frutos un arrendatario." Diccionario de la Lengua Española de la Real Academia Española, 16ª edición. Sostener, por tanto, que el demandante no sabía que estaba recibiendo los cánones mensuales por el arrendamiento de su casa y que su actuación, unida a la del demandado, no renovó el contrato, es ir contra los hechos probados.

Además, deseamos corregir un error involuntario en que incurrimos en el párrafo séptimo de esta opinión al decir que el canon correspondiente al mes de diciembre de 1946 no fué satisfecho por el demandado. La verdad es que la prueba demostró que el demandado trató de pagar dicho canon y el demandante no lo aceptó, siendo, por tanto, en dicha

fecha que en realidad dió por terminado el contrato de arrendamiento. Y bajo la doctrina sentada en los casos de *Cerra* v. *González,* supra; *Bianchi* v. *Bianchi,* 41 D.P.R. 799; *Padua* v. *Corte Municipal,* supra, correspondía a la corte municipal la jurisdicción para conocer del caso. No debemos olvidar que la única cuestión envuelta es una de jurisdicción. Nadie discute el derecho del demandante a desahuciar al demandado al negarse a aceptar el canon correspondiente al mes de diciembre de 1946 y al decirle al demandado que daba por terminado de nuevo el contrato de arrendamiento, empero, bajo estas circunstancias, la acción tenía que iniciarse en la corte municipal.

Que la aceptación por el arrendador de cánones de arrendamiento, aun en casos en que ha habido una violación del contrato, por parte del arrendatario, es factor primordial que determina una renovación del contrato y no una mera cuestión técnica de designación errónea o formulismo (*labels*), ha sido resuelto por este Tribunal en *Del Toro* v. *The Juncos Central Co.,* 29 D.P.R. 23 y *Morales* v. *Martínez,* 40 D.P.R. 724, y es la doctrina firmemente establecida por la jurisprudencia americana y aceptada por los tratadistas. Véanse las citas contenidas en los casos de *Del Toro* y *Morales,* supra, y las contenidas en la nota 2 de la sección 687 de Williston *on Contracts,* Vol. 3, pág. 1980, en la que se expone la doctrina de que la aceptación del pago del canon de arrendamiento después que ha habido una violación del contrato, constituye una condonación de dicha violación y se afirma que "Este principio fué tempranamente establecido en la Ley sobre Arrendador y Arrendatario".

Y como se dice por Walter Shirley Shirley, en su obra "A Selection of Leading Cases in the Common Law," página 104, citada en el caso de *Del Toro* v. *The Juncos Central Co.,* supra: "Las cortes se inclinan en contra de la rescisión de los arrendamientos, y, por lo tanto, echan mano ansiosamente de cualquer acto positivo del arrendador del cual

pueda inferirse que eligió pasar por alto la violación de lo convenido y continuar el arrendamiento. El más satisfactorio de los actos que envuelven una renuncia a la rescisión es, 'la aceptación de cánones devengados después de la causa rescisoria,' y si tales cánones son aceptados, no importa que el arrendador los recibiera bajo protesta y manifestara que no intentaba renunciar a la rescisión.''

Aunque la cuestión envuelta en el caso de autos es distinta, el principio general aplicable debe ser el mismo. El demandante al comprar la casa y obtener el certificado de evicción dió por terminado el contrato de arrendamiento que existía entre el demandado y el dueño anterior. Empero, después de asumir esa actitud, cobró y aceptó el pago de los alquileres de la casa. Fué éste un acto positivo y explícito del demandante que tuvo por consecuencia renovar el contrato de arrendamiento. El certificado de la OAP no podía variar el resultado legal de dicha actuación.

El caso de *Ball* v. *Vilá*, 67 D.P.R. 415, citado por el Tribunal, si algo demuestra es que tenemos razón. En él se hace constar que ''Concedemos que el *pacto de pagar $80 mensuales por la casa terminó con el contrato* el 8 de marzo de 1941, y que lo que el apelado puede recobrar es el valor razonable del uso de la casa.'' (Bastardillas nuestras.)

Es cierto que el abogado de Ball erróneamente alegó que estaba cobrando el importe de los cánones de arrendamiento vencidos con posterioridad a dicha fecha, y que la acción fué titulada en cobro de dinero, empero, aplicando la Regla 81(*b*) de Enjuiciamiento Civil, hicimos caso omiso de ese defecto en la denominación de la acción.

No vemos qué pertinencia pueda tener dicho caso con los hechos probados en el presente. Como dijimos en el de *Morales* v. *Martínez*, supra, págs. 728–9: ''Las consecuencias legales que emanan de su aceptación (por el demandante) de los cánones como tales *son determinadas por lo que él hizo, y no por lo que dijo*. (Citas)'' (Bastardillas

594

nuestras.) Y en este caso el demandante, no sólo por lo que dijo en los recibos, sino por lo que hizo, es decir, haber primero aceptado los cánones de arrendamiento después de haber dado por terminado el contrato y luego haber rehusado continuar recibiéndolos y por segunda vez darlo por terminado, tiene que atenerse a las consecuencias legales de sus actuaciones.

En cuanto a que el demandante aceptó el pago por el "uso" de la casa y no como "alquiler" de la misma, ¿qué es un contrato de arrendamiento? Pues sencillamente ceder el *uso* de una cosa por un precio y tiempo determinados. Así lo define el artículo 1433 del Código Civil (ed. 1930), Y, por último, no puede haber duda de que, independientemente de lo que una mente legal quiera que ·unas palabras signifiquen, empíricamente, la generalidad de las personas en nuestra Isla, cuando usan las palabras "alquiler" y "renta" lo hacen dándoles su significado corriente y usual, es decir, en el sentido de que se refieren a un contrato de arrendamiento.

A nuestro juicio, el tribunal inferior carecía de jurisdicción para conocer del caso y por tanto debe dejarse en efecto nuestra sentencia original revocando la sentencia apelada.