GARAGE COOPERATIVO DE SABANA GRANDE, demandante y recurrido, *v.* ARCO CARIBBEAN, INC., demandada y recurrente.

*Número:* R-80-529     *Resuelto:* 14 de mayo de 1981

*Brown, Newsom & Córdova* y *Alberto Picó Santiago*, abogados de la parte recurrente; *Manuel Cruz Soto*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El 8 de junio de 1963 el señor Luis Nazario Rivera cedió en arrendamiento a la Sinclair Caribbean Oil Company un solar donde enclava una estación de gasolina. El término pactado para el arrendamiento era de quince

años con opción a tres prórrogas consecutivas de cinco años cada una. El contrato se inscribió en el Registro de la Propiedad. La sucesora de Sinclair Caribbean, Arco Caribbean, lo subarrendó a Garaje Cooperativo de Sabana Grande el 15 de noviembre de 1966. El término convenido para el subarriendo fue de un año.

Posteriormente, el 15 de agosto de 1972, la subarrendataria compró el solar subarrendado a su dueño, Luis Nazario Rivera. Continuó el pago del canon pactado a Arco Caribbean. Al vencer el primer plazo de quince años pactado en el 1978, Arco Caribbean notificó a su dueño actual, la demandante, su intención de ejercer la opción de la primera prórroga de cinco años. Ésta se negó a concederla. Recurrió a los tribunales para rescindir el contrato. Alegó en su demanda que el permitir a Arco Caribbean acogerse a la prórroga equivaldría a una restricción indebida del derecho de disponer de la propiedad y que el contrato es contrario a la ley, la moral y el orden público, conforme a *Franceschi* v. *Texaco P.R., Inc.,* 103 D.P.R. 759 (1975).

Arco Caribbean radica moción de desestimación en la que alega sustancialmente que los hechos del caso de *Franceschi* lo hacen distinguible del presente caso.([1]) La demandante radica oposición a dicha moción de desestima-

---

([1]) En efecto, las circunstancias en *Franceschi*, supra, eran distintas a las del presente caso y, por tanto, la norma allí establecida es inaplicable a la situación ante nos. En *Franceschi*, el dueño de un inmueble otorgó una hipoteca sobre la propiedad para garantizar un préstamo que le concedió Texaco de P. R., Inc. Simultáneamente, el dueño, Franceschi, le arrendó la propiedad a Texaco mediante documento público que luego fue inscrito en el Registro, y al mismo tiempo, pero mediante documento privado, Texaco le subarrendó al propio Franceschi la misma propiedad por el mismo canon que había sido pactado para el arrendamiento. Se trataba, pues, de una transacción sin causa y, por tanto, inexistente, un artificio cuyo único propósito y efecto era limitar al dueño su facultad de disponer libremente de la propiedad, dando a Texaco como acreedora hipotecaria, mayor control sobre el inmueble que el que provee la hipoteca. Concluimos, en consecuencia, que restringir la libre contratación y el derecho de libre disposición de contratos era contrario a la ley, la moral y el orden público.

ción, conjuntamente con una moción de sentencia sumaria. El Tribunal Superior declaró con lugar la moción de sentencia sumaria. Resolvió que con posterioridad a la fecha en que el anterior dueño vendió al subarrendatario, el contrato de arrendamiento advino inexistente.

■ ¿Procede anular un contrato de arrendamiento debidamente inscrito en el Registro de la Propiedad por el hecho de que un subarrendatario le compre la propiedad al dueño y arrendador original?

■ Mediante el contrato de arrendamiento, el dueño se desprende voluntariamente de parte del derecho de propiedad consistente en el goce o uso material de la cosa por determinado tiempo, a cambio de un precio. El contrato de arrendamiento debidamente inscrito en el Registro de la Propiedad se convierte en un derecho real que surte efecto contra tercero. *Becerril et al.* v. *Post et al.*, 22 D.P.R. 732 (1915); *Saavedra* v. *Central Coloso, Inc.*, 85 D.P.R. 421, 422 (1962). A ese efecto dispone el Art. 1461 del Código Civil que "[e]l comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria". Morell y Terry comenta:

> El arrendatario en los casos normales, o con arreglo al Código civil, adquiere un derecho temporal y limitado al goce de la cosa; celebra con el dueño un contrato, y del contrato resultan sus obligaciones y sus facultades; pero al cambiar las fincas de dueño, la ley estima que al nuevo adquirente no le obliga el arrendamiento y puede por lo mismo darlo por terminado, lanzando del inmueble al arrendatario, por sola su voluntad.
>
> Inscrito el arrendamiento, las circunstancias cambian por completo, la inscripción al hacer público el derecho del arrendatario, obliga a su general respeto, y aunque la finca cambie de dueño no puede el nuevo adquirente despedir al arrendatario, teniendo éste, por lo tanto, un derecho firme. Morell y Terry, *Comentarios a la Legislación Hipotecaria*, 2da ed., Madrid, Ed. Reus, 1925, T. I, Vol. II, pág. 452.

■ Roca Sastre sostiene que el arrendamiento inscrito impone la subrogación en los derechos y obligaciones propias del arrendador, en la persona del posible tercer adquirente, gracias a lo cual se logra la estabilidad arrendaticia, que es el designio perseguido por la ley en esta materia. *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. III, pág. 528. Y es que "es un principio de equidad y de jurisprudencia universal que nadie puede transmitir a otro más derecho del que el mismo tiene". Roca Sastre, *op. cit.*, pág. 513.

■ La protección contra la terminación del arrendamiento por futuros adquirentes antes de vencer el término pactado es absoluta. No se hace distinción alguna entre futuros adquirentes. Ni hay motivo válido para hacerla. Si el subarrendatario es el nuevo dueño del inmueble arrendado, lo es sujeto al gravamen que conocía existente al comprar el inmueble.

■ Además, en el presente caso, el subarrendatario, ya dueño de la finca, continuó pagando el canon al arrendatario-subarrendador por un período en exceso de cinco años. No fue hasta que se le solicitó la prórroga del contrato, vencidos los 15 años iniciales, que objetó la continuación del mismo. Aun si el contrato no hubiera estado inscrito, esta actuación le impedía repudiarlo después de haber consentido al mismo por tan largo período. El Tribunal Supremo de España lo tiene así decidido al interpretar el Art. 1571 del Código Civil, correspondiente al 1461 nuestro. En la Sentencia del 28 de febrero de 1913 expresa:

Considerando que en el caso del art. 1571 del Código civil, el arriendo vigente al verificarse la venta no termina *ipso facto* por la adquisición de la finca locada, sino que es requisito indispensable que el comprador manifieste su voluntad de no acatar el contrato concertado por su causante en el dominio, en su consecuencia, cuando en vez de adoptar esta actitud el nuevo dueño del predio, revela con actos

explícitos su intención de que el repetido contrato continúe en vigor, no puede después ejercitar, por la causa especial fijada en dicho precepto, la acción de desahucio, salvo la concurrencia de alguna de las enumeradas en el art. 1569[2] del propio Código y sus concordantes en la ley de Enjuiciamiento civil.

Véase *Bianchi* v. *Bianchi*, 41 D.P.R. 799 (1931).

Por lo anteriormente expresado es inescapable concluir que el contrato celebrado entre Nazario y Arco, inscrito en el Registro de la Propiedad, continúa vigente. *Procede, por tanto, revocar la sentencia recurrida.*

---

[2] Correspondiente al Art. 1459 del nuestro que lee así:

"El arrendador podrá desahuciar judicialmente al arrendatario por alguna de las causas siguientes:

"1. Haber expirado el término convencional o el que se fija para la duración de los arrendamientos en las secs. 4083 y 4092 de este título.

"2. Falta de pago en el precio convenido.

"3. Infracción de cualquiera de las condiciones estipuladas en el contrato.

"4. Destinar la cosa arrendada a usos o servicios no pactados que la hagan desmerecer; o no sujetarse en su uso a lo que se ordena en el número 2 de la sec. 4052 de este título."