Gregorio Santiago y Luis Díaz, demandantes y apelantes, v. Ramón González y Ramón Espinosa, Alcalde de Bayamón, Puerto Rico, demandados y apelados.

Núm. 10139.—*Sometido:* Noviembre 13, 1950. *Resuelto:* Diciembre 6, 1950.

*Diego O. Marrero* y *Federico Valladares,* abogados de los apelantes; *Luis Archilla Laugier* y *José E. Bosch Roqué,* y *José R. Fournier,* abogados, respectivamente, de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Gregorio Santiago y Luis Díaz instaron demanda de *injunction* contra Ramón González y Ramón Espinosa, este último en su carácter de alcalde de Bayamón. Alegaron en síntesis que Gregorio Santiago es dueño de un solar de 296 metros cuadrados (sic) en la urbanización Santa Cruz de Bayamón, donde tiene construídas tres casas, en una de las cuales el codemandado Luis Díaz explota un establecimiento comercial; que en plena vía pública y lindando con las propiedades de los demandantes, el demandado Ramón González ha construído una casa de madera y concreto y está construyendo una verja de bloques que una vez terminada privará al demandante Santiago de suficiente luz y aire y del derecho de libre tránsito por la calle Santa Cruz, todo ello con la anuencia y consentimiento tácitos del codemandado Espinosa. Solicitaron se librara mandamiento de injunction dirigido a los demandados para que éstos se abstuvieran inmediatamente de seguir construyendo la verja y para que procedieran a destruir la parte del edificio que obstruye la vía pública.

A esa demanda contestó el demandado Ramón González aduciendo ciertas defensas especiales y negando sus alegaciones esenciales. Fué el pleito a juicio y las partes ofrecieron abundante prueba testifical y documental. Procedió entonces la corte a dictar sentencia, declarando sin lugar la demanda, con costas a los demandantes, más la suma de $300 para honorarios de abogado.

Siete errores señalan los demandantes para sostener la apelación interpuesta. Los errores primero y cuarto son

en esencia que la corte inferior erró al dictar sentencia declarando sin lugar la demanda, cuando siendo ésta una contra Ramón González y Ramón Espinosa, este último admitió todos y cada uno de los hechos alegados en la demanda al no formular contestación alguna, estableciendo así un claro conflicto con las defensas y alegaciones de su codemandado Ramón González, suficiente para que se consideraran probadas todas las alegaciones de la demanda y para que en su consecuencia, se decretara el injunction solicitado.   No nos citan los apelantes caso alguno que nos convenza de que cuando en una acción hay varios demandados y a uno o más de ellos se les anota la rebeldía, por ese solo hecho debe dictarse sentencia contra el demandado o los demandados que comparecen a defenderse.   Tampoco hemos podido hallar nosotros ningún caso que sostenga tal principio. [1]

■ Los errores dos y tres se dirigen a la apreciación de la prueba hecha por el tribunal a quo.   Esto nos obliga a reseñar, aunque sea de manera somera, la prueba desfilada en el caso.   Por los demandantes declararon Gregorio Santiago, Javier Colmenares, Luis Díaz, Luis Torregrosa Rodríguez, Charles Rommy, Enrique Medina y Mariano Ayala. Por los demandados meramente el Lic. José R. Fournier.

*Gregorio Santiago* es uno de los demandantes y vive en el barrio Juan Sánchez, de Bayamón, donde desde hace 25 años tiene tres casas con frente a una calle transversal.   La propiedad era de Gabriel Guerra [2], quien tenía allí un terreno y a quien le pararon la obra porque no podía vender solares si no hacía una calle transversal.   Guerra empezó la urbanización y no se la recibían si no tenía tres calles transversales, que son las que tiene la urbanización ésa.   Cuando compró su solar la calle transversal ya estaba.   Primero hizo

---

[1] De los autos no aparece que la rebeldía de Espinosa fuera anotada. Se desprende de ellos por el contrario que éste compareció al juicio y que si bien no radicó contestación escrita, sin embargo, interrogó, como podía hacerlo, a los testigos. *Rivera* v. *Goitía*, 70 D.P.R. 30, 33.

[2] Los testigos se refieren posteriormente a Arturo Guerra y a éste hacen referencia las escrituras ofrecidas en evidencia.

el negocio y como a los 23 ó 24 años se otorgó la escritura. Se le exigió que cediera parte de su solar para la calle transversal. Compró a plazos. Como al año o año y medio fabricó en el solar adquirido una casa de madera y luego en la parte de atrás del solar hizo una mejora con frente a la transversal. En ésta el demandado Ramón González fabricó una casita pequeña, de madera, en la misma esquina de la calle transversal. La casa de cemento que él fabricó en la parte de atrás del solar la dedicaba a alquiler, pero el inquilino se le fué porque el solar no tenía salida. González tapó el frente a la calle, al igual que la ventilación. La calle transversal existe allí desde hace unos 24 años. El solar del testigo tenía dos frentes y la mejora en la parte de atrás la hizo hace como seis años. La calle transversal estaba afirmada. Salía de la calle Esteban Padilla y llegaba hasta la Carretera Militar. La calle transversal pertenecía a todo el pueblo de Bayamón. Él es el mismo Gregorio Santiago que radicó ante la Corte de Distrito de Bayamón un pleito de injunction contra el demandado Ramón González. Demandó a González porque éste le tapó toda la entrada de sus casas con una cerca, sin dejarle entrada, y porque aquélla era la calle transversal. Luis Díaz es su yerno. Cuando fabricó la mejora no existía allí la construcción de Ramón González; después fué que éste la hizo. Al pasar la urbanización al dominio del municipio de Bayamón la calle transversal ya estaba hecha.

*Javier Colmenares* es periodista y fotógrafo. [3]

*Luis Díaz* reside en la calle Esteban Padilla y posee una casita en una calle transversal, donde tiene un cafetín. Ha sufrido perjuicios con motivo de la edificación que se está levantando allí. La urbanización tiene el nombre de Santa Cruz. Todo el mundo usaba la transversal para ir a la parte de atrás y esa calle tenía encintado de lado a lado. Ramón González, a quien el municipio había dado el usufructo, cons-

---

[3] Se presentan en evidencia ciertas fotografías y se marcan *exhibits* 2, 3, 4, 5 y 6 de los demandantes.

truyó una casa de madera en la transversal. Mariano Ayala, quien compró la calle transversal al Lic. Fournier, demandó a Marcos Santiago, pero desistió del caso. Gregorio Santiago, suegro del testigo, tiene allí una edificación de madera y de concreto, con frente a la calle transversal.

*Luis Torregrosa Rodríguez* reside en la calle Esteban Padilla y sabe que a esa urbanización la llaman Santa Cruz. Arturo Guerra abrió una calle en esos terrenos en una urbanización que hizo allí con permiso del Departamento de Sanidad. La calle no tenía nombre pero más tarde la Asamblea le puso el de Esteban Padilla. Compró allí un solar de 300 metros a la derecha. Entre el solar de él y el de Gregorio Santiago había un predio de terreno. Cuando Arturo Guerra hizo la urbanización dejó al sur un sitio para una calle. En conversaciones que tuvo con Arturo Guerra éste le dijo que había ordenado que parte del solar del testigo se dejara como calle para dar acceso a la finca del otro colindante. Aquel era un sitio público, porque todo el mundo podía entrar por allí. Preguntado, "¿Ése era un pedazo de terreno por donde se pensaba tirar una calle?" replicó: "Sí, una calle; . . . y dejaron como un metro; se hizo una cuneta, con un badén desde la esquina de mi casa hasta el solar ése. . . ." Interrogado, "¿Entonces ese terreno no se convirtió nunca en una calle?" contestó: "No se convirtió nunca en calle, fué un proyecto de calle, que yo sepa. . . . Nunca tuvo nombre." Preguntado, "¿Sabe usted si se conservó ese terreno como una calle?" contestó: "No sé nada de eso; no, señor." Y "¿Se le puso asfalto o encintado?" y replicó: "No, a la parte mía con Canuto Vargas le pusieron una especie de badén, . . . ."

*Charles Rommy* es Jefe Interino del Negociado de Sanidad del Departamento de Salud y tiene en su poder todos los documentos que había en el Departamento relacionados con la urbanización Santa Cruz. Tiene el plano de ella, pero no sabe cuál es la calle Esteban Padilla. Unas líneas rojas

que aparecen en el plano significan calles transversales de 10 metros de ancho. El plano fué presentado al Departamento de Sanidad por Arturo Guerra allá para el 5 de noviembre de 1925. No sabe si la urbanización se ha hecho en la forma en que está el proyecto. Vino meramente a traer los documentos que se relacionan con dicha urbanización. El Departamento aprobó el plano con las tres calles de 10 metros de ancho que en rojo están trazadas en el mismo.

*Enrique Medina* es Secretario Auditor del municipio de Bayamón y tiene a su cargo los documentos públicos del mismo. Conoce la urbanización Santa Cruz y le consta que por la Ordenanza Núm. 10 del 17 de noviembre de 1925 el municipio aprobó el plano de ésta.

*Mariano Ayala* tuvo en la urbanización Santa Cruz un solar que le compró al Lic. Fournier. "Era una parte de una prolongación que había en la parte abajo y otra parte que dejó la Carretera Militar." Era parte de una calle transversal cuando lo compró. Eso había sido una calle desde que lo conoce. Como el municipio aparecía ser el dueño, el testigo deshizo el negocio y el Lic. Fournier le devolvió el dinero. El solar es prolongación de la calle transversal que cruza la calle Esteban Padilla. La urbanización Santa Cruz tenía tres calles transversales. Aun cuando llegó a ese sitio hará dos años, tiene 24 años de edad y se crió allí. Durante todo ese tiempo la urbanización Santa Cruz ha tenido tres transversales. En el terreno de la transversal actualmente hay una casa enclavada y el municipio alega que el terreno es de su propiedad. Eso siempre fué prolongación de una calle transversal, pero no tenía uso de calle hasta que la hiciera la W P A. El que necesitaba pasar, pasaba por allí. Esa transversal tendría aproximadamente de 10 a 12 metros de ancho y de 9 a 10 de largo. Tenía verja y hubo que destruirla cuando se empezó a construir la Carretera Militar. Es la misma transversal que el testigo le iba a comprar al Lic. Fournier. En ella no hay postes de luz, ni aceras, sola-

mente un pequeño encintado. Cuando fué a comprar el terreno Gregorio Santiago, estaba haciendo la construcción de la parte de atrás y él le puso una demanda de desahucio.

La prueba testifical de los demandados consistió, conforme ya hemos dicho, exclusivamente en el testimonio del *Lic. José R. Fournier.* Éste declaró que es abogado y notario y reside en Bayamón; que posee varias propiedades en ese pueblo y que vendió a Ramón González un solar situado en la calle Esteban Padilla; que adquirió ese solar por compra a Ernestina Guerra, hija de Arturo Guerra y casada con Celestino Castro; que ese solar linda por el frente con la calle Esteban Padilla y por la derecha entrando con Gregorio Santiago; que es el solar a que se refiere el pleito; que nunca ha existido allí calle alguna; que ha visto las construcciones de González y que éstas están dentro de los límites del solar que le vendió; que la totalidad de la finca era de Arturo Guerra y al fallecer éste la heredó Ernestina Guerra, hija natural reconocida de aquél; que siendo ingeniero el esposo de Ernestina, continuaron la urbanización comenzada por Arturo Guerra; que entonces siguieron vendiendo solares y él les compró el solar envuelto en el litigio, otorgándose la escritura ante el notario Manuel Torres Reyes; que ese solar fué segregación de una finca de mayor cabida y se inscribió en el registro a su nombre; que el solar nunca fué cedido por Guerra al municipio y que esto le consta porque él era abogado de la sucesión Guerra; que la venta del solar a Mariano Ayala se deshizo y por último lo vendió a Ramón González, debido a que primero se lo arrendó a González y éste sin su consentimiento construyó en él una casita; que cuando compró el solar, allí no había indicio de calle alguna y que no podía ser considerada como calle en ningún momento porque ésa era una entrada que había para la finca de los Luiña.

En adición a la testifical, según ya hemos indicado, las partes ofrecieron prueba documental. La de los demandantes consistió en: copia de la escritura pública (exhibit 1)

otorgada en 17 de diciembre de 1927, a virtud de la cual Arturo Guerra Acosta vendió a Gregorio Santiago un solar de 286 metros cuadrados; ($^4$) en las cinco fotografías (exhibits 2 al 6) a que hemos hecho referencia en la nota 3; en copia de la demanda de desahucio en precario (exhibit 7) instada por Mariano Ayala contra Marcos Santiago y en la contestación enmendada a la misma; en el permiso concedido (exhibit 8) por el Departamento de Sanidad a Marcos Santiago, para construir un mirador en la calle Esteban Padilla; en dos documentos (exhibits 9 y 10) relacionados con la misma construcción; en dos planos en papel azul (exhibits 11 y 12), cuyos originales han sido elevados a este Tribunal; ($^5$) en comunicación dirigida en diciembre 30 de 1930 por Arturo Guerra al Comisionado de Sanidad (exhibit 13), en la cual aquél hace constar que con fecha 27 de noviembre de 1925 recibió de ese Departamento una comunicación en que se le concede permiso para urbanizar una parcela de terreno situada en el barrio Santa Cruz de Bayamón, que ha dado término a los trabajos de la misma y suplica se de-

---

($^4$) En esa escritura se hace constar que Arturo Guerra Acosta es dueño en el barrio Juan Sánchez del término municipal de Bayamón, de una finca de 14 cuerdas 20 céntimos; que la hubo por venta judicial y que la misma está inscrita en el Registro de la Propiedad; y que *de ese terreno segrega y vende a Gregorio Santiago un solar que mide 11 metros de frente por 26 de fondo, colindante al sur con una calle transversal en proyecto.* (Énfasis nuestro).

($^5$) Uno de éstos, exhibit 12, es un plano de un proyecto de urbanización de la finca Santa Cruz, radicado en noviembre de 1925 en el Departamento de Sanidad. En este plano aparece trazada una calle nombrada Santa Cruz y a un lado y al otro de la misma figuran trazados ciertos solares, marcados del 1 al 12 los del lado derecho y del 63 al 120 los del lado izquierdo de ella. El papel del plano, como hemos dicho, es azul y tanto la citada calle como el trazado y los números que identifican los solares aparecen en color blanco. Sin embargo, sobre las líneas blancas que designan los solares 62 y 120; 46 y 104; y 25 y 83, aparecen superpuestas unas líneas en lápiz rojo. Luego, en tinta negra, hay tres flechas y las palabras "calles 10 m. ancho" como para indicar que los solares que aparecen dentro de las rayas hechas con lápiz rojo representan calles transversales a la Santa Cruz, de 10 metros de ancho.

El exhibit 11 es un plano para la construcción de una casa de madera de 12 × 14 pies.

signe un ingeniero para que reciba las obras llevadas a cabo; en copia certificada de la Ordenanza adoptada por la Asamblea Municipal de Bayamón el 17 de noviembre de 1925 (exhibit 14) aprobando el plano de urbanización de ciertos terrenos que están en la prolongación de la calle Santa Cruz de dicho pueblo([6]); en copia certificada de una ordenanza (exhibit 15) aprobada por el municipio de Bayamón en 29 de noviembre de 1944, a virtud de la cual éste le concede a Ramón González el usufructo de un solar en los terrenos de la urbanización 'Guerra', lindando al norte con solares de Marcos Santiago y Gregorio Santiago ([7]); en copia fiel de la escritura de compraventa otorgada por el Lic. Fournier a Mariano Ayala (exhibit 16) de un solar de 220 metros cuadrados, situado en la calle Esteban Padilla, de Bayamón, *en lindes por el norte con Gregorio Santiago;* y en copia de la escritura de compraventa e hipoteca (exhibit 17) otorgada el 8 de febrero de 1947 por el Lic. Fournier y esposa al demandado Ramón González de un solar en la referida calle, *lindante al norte con Gregorio Santiago.*

La prueba documental de los demandados consistió en copia de la demanda de reivindicación (exhibit 1) instada ante la Corte Municipal de Bayamón por el aquí demandado Ramón González contra Marcos Santiago y Guillermina Santiago y contra el aquí demandante Luis Díaz, en relación con un trozo de 44.30 metros cuadrados del solar que González adquirió del Lic. Fournier y esposa; en copia de la demanda (exhibit 2) presentada en pleito de injunction para recobrar la posesión por Gregorio Santiago contra Ramón González,

---

([6]) En la sección segunda de esa Ordenanza se dice que Arturo Guerra queda obligado a afirmar con piedra toda la longitud *de la calle* que se propone urbanizar y *que las calles* tendrán 10 metros de ancho; y en la sección tercera que Guerra estará obligado a instalar el alumbrado eléctrico *en dicha calle.* (Énfasis nuestro). A juzgar por la ordenanza no se sabe, en verdad, si la urbanización al ser aprobado el plano tenía una sola calle o varias calles.

([7]) Se dice en esa Ordenanza que "el solar es parte y se segrega de los terrenos de la urbanización Guerra, propiedad del municipio." Cf. *Saldaña* v. *Concejo Municipal de San Juan,* 15 D.P.R. 37.

aquí demandante y demandado, respectivamente[8]; y en copia (exhibit 3) de la sentencia dictada en el mismo.

En adición a todo ello la corte practicó una inspección ocular, en presencia de las partes, de sus abogados, del secretario, del Márshal y del taquígrafo e hizo constar por escrito sus conclusiones.[9]

Con toda la prueba ante sí y tomando además en consideración la inspección ocular por ella practicada[10] la corte, como ya hemos dicho, dictó sentencia declarando sin lugar la demanda. Hemos leído repetida y detenidamente esa prueba. La hemos reseñado más arriba. Y todo ello, unido a la lectura del Acta de la Inspección Ocular, no nos lleva al convencimiento de que su apreciación sea manifiestamente errónea ni de que deba, por ende, revocarse la sentencia apelada. *Camacho* v. *Compañía Popular de Transporte*, 69 D.P.R. 724, 729; *Oliver Cuveljé* v. *González*, 37 D.P.R. 936.

[8] En esa demanda de injunction posesorio el aquí demandante Gregorio Santiago, luego de hacer constar que es dueño del solar que describe en la calle Esteban Padilla y de que allá para el 1941 construyó una habitación de concreto armado con salida hacia el sur, alega que esa salida o derecho de paso consiste en *"camino de un metro de ancho por 5 metros de largo que se extiende hacia el sur"* y que el demandado hace 4 ó 5 semanas que construyó una cerca de madera y zinc que se extiende desde la Carretera Militar hasta el solar del demandante y le cierra el camino que se extiende desde su casa hasta dicha Carretera Militar. (Énfasis nuestro).

[9] En el párrafo tercero del Acta de la Inspección Ocular dice la corte:
"No hay ningún signo aparente de que entre la casa amarilla del demandado y la casa de maderas forrada de zinc propiedad del demandante exista calle alguna." Luego, al final del párrafo sexto del Acta, hace constar:
"Por la parte en donde estamos parados en la Carretera Militar no hay ningún signo aparente que demuestre que allí exista ninguna calle que desemboque en la Carretera Militar (y) ni en los terrenos de la Autoridad de Hogares."

[10] Los apelantes también atacan las conclusiones de la corte inferior en el acta de la inspección ocular. Ellos estuvieron presentes durante dicha inspección y no aparece de los autos que solicitaran se modificaran o ampliaran las mismas en forma alguna. Es en esta Corte donde por primera vez impugnan dichas conclusiones. Cf. *Lampón* v. *Línea Romero*, 60 D.P.R. 212, 213; *Figueroa* v. *Vives & Maxan*, 46 D.P.R. 240, 242; *Lamboy* v. *Solo*, 29 D.P.R. 905, 906.

■■ El quinto error imputa a la corte inferior haber errado al referirse en su opinión a un pleito de injunction para recobrar la posesión. No existe tal error. La demanda radicada en dicho pleito fué ofrecida en evidencia y a él se refirieron algunos testigos. Siendo ello así, aunque en esa clase de pleitos sólo se dirime el hecho en sí de la posesión, la corte podía en su opinión referirse al mismo. Por otra parte, sea ello como fuere, la apelación se da contra la sentencia y no contra los razonamientos de la opinión. *Bird* v. *Bird,* 69 D.P.R. 369, 373.

■ Imputan, asimismo, los apelantes a la corte inferior haber actuado movida por pasión, prejuicio y parcialidad. Comienzan su discusión de este error alegando que el juez sentenciador anuló *sua sponte* la orden de entredicho dictada por un juez interino que actuó en el mismo tribunal. Están equivocados. Dicha orden no fué dictada *sua sponte.* En los autos aparece, por el contrario, una moción del codemandado Ramón González solicitando la disolución de la orden, que al comenzar el juicio la cuestión se discutió ampliamente por las partes y que fué entonces que la corte anuló la orden de entredicho.

Al discutir el mismo error, se refieren, también, los apelantes al incidente surgido entre uno de los abogados de ellos y el juez que presidía la corte, al solicitar aquél la oportunidad para presentar en evidencia una certificación literal del registro de la propiedad en relación con el título adquisitivo del terreno en controversia por el Lic. Fournier. No es menester que refiramos ese incidente en detalle. Bastará decir que la corte finalmente concedió a las partes todo el tiempo que fuera necesario para examinar los protocolos del notario Torres Reyes; que éstas así lo hicieron; que a su regreso el Lic. Fournier informó al tribunal que habían ido a la oficina de dicho abogado, que habían visto el protocolo de éste correspondiente al año 1943 y que allí figuraba la escritura número 4 relativa al solar vendídole por Celestino Castro y Ernestina Guerra; que el mismo era una segregación de una finca de

mayor cabida y que ésta estaba inscrita; que la corte enton-ces preguntó a los demandantes: "¿La otra parte, qué dice?" y que éstos, por su abogado, entonces replicaron: "Sí, señor, está bien." Bajo estas circunstancias, no puede decirse que como resultado de ese incidente el juez dictara su sentencia movido por pasión, prejuicio o parcialidad.

■ También sostienen los demandantes al discutir este error que el juez resolvió el caso festinadamente, ya que dictó sentencia al día siguiente de quedar sometido el caso. Si el juez que dictó la sentencia fué la persona ante quien desfiló toda la prueba testifical y documental, y la persona que practicó la inspección ocular, no es de extrañar que dictara su sentencia con tal rapidez, ya que su participación en el caso lo ponía en condiciones de así hacerlo.

■■ El séptimo y último error es que la Corte de Distrito abusó de su discreción al condenar a los demandantes al pago de $300 por concepto de honorarios de abogado. En reiteradas ocasiones hemos dicho que la imposición de honorarios a la parte perdidosa es discrecional en el tribunal sentenciador y que con tal discreción no intervendremos a no ser que se nos demuestre un claro abuso de ella. No se nos ha demostrado tal abuso en este caso. *Figueroa* v. *Picó*, 69 D.P.R. 401, 405; *Sánchez* v. *Cooperativa Azucarera*, 66 D.P.R. 346, 353; *Sandoval* v. *Simonet*, 62 D.P.R. 400, 406.
*Debe confirmarse la sentencia apelada.*