GUDELIA TORRES BONILLA y SANTIAGO SANTIAGO RIVERA, demandantes y apelados, *v.* JULIO BIAGGI, demandado y apelante.

Núm. 10555.—*Sometido:* Noviembre 5, 1951. *Resuelto:* Noviembre 29, 1951.

*Sergio León,* abogado del apelante; *R. Hernández Matos* y *A. Colón Clavell,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Gudelia Torres Bonilla y Santiago Santiago Rivera radi-

caron en 31 de mayo de 1950 ante la extinta Corte de Distrito de Ponce demanda de desahucio por detentación contra Julio Biaggi. Alegaron en ella ser dueños en pleno dominio de una casa de mampostería, situada en la calle Comercio de Yauco, y haberla adquirido por compra en 13 de marzo de 1948, mediante escritura pública; que para la fecha de la adquisición el demandado ocupaba en dicha propiedad un local en que tenía un establecimiento mercantil, a virtud de un contrato verbal de arrendamiento; que ellos no renovaron en forma alguna dicho contrato y por el contrario lo dieron por terminado, notificándole por escrito al demandado que debía desocupar el local; que a pesar de haber transcurrido más de dos años del requerimiento por escrito el demandado no lo ha desocupado; y que ellos desean obtener de buena fe la posesión material del mismo para ocuparlo inmediatamente para su uso personal, retirándolo permanentemente del mercado de alquileres comerciales y de viviendas.

Negó el demandado en su contestación haber recibido de los demandantes notificación escrita al efecto de que éstos daban por terminado el arrendamiento, aunque admitió haber recibido notificación escrita en el sentido de que el propósito de los demandantes era vender la casa. Alegó que los demandantes dejaron sin efecto esa notificación y explícitamente hicieron un nuevo contrato de arrendamiento, a virtud del cual él cedía a aquéllos una habitación de las que ocupaba en cambio de la construcción de un nuevo anexo; y que los demandantes al tratar de obtener la posesión del local no actuaban de buena fe, puesto que lo que pretenden es vender el edificio.

Como defensas especiales el demandado alegó que la corte carecía de jurisdicción por no llegar el canon del alquiler a $1,000 y que luego de la novación del contrato no se le requirió con seis meses de antelación a la radicación de la demanda para que desalojara el local; que ha pagado puntualmente el canon de arrendamiento desde la novación del contrato; que después de esa novación él ha ampliado su negocio allí

establecido; y que los demandantes no pretenden usar el local de buena fe y para su uso personal, sino que lo que pretenden es la venta del edificio.

Celebradas conjuntamente las dos comparecencias requeridas por la ley y visto el caso en sus méritos, las partes ofrecieron prueba testifical y documental. La corte dictó entonces sentencia declarando con lugar la demanda y ordenando el desalojo del demandado dentro del término de veinte días de ser firme la sentencia.

Insiste el demandado en apelación en que el tribunal inferior erró al no resolver que el requerimiento héchole por los demandantes en 4 de mayo de 1948 quedó sin efecto por el transcurso del tiempo, por la novación del contrato, por tácita reconducción del mismo y porque habiendo expirado en 31 de mayo siguiente el término concedídole para desalojar el edificio no se le hizo un nuevo requerimiento en armonía con lo dispuesto por la ley.

Cuando en 13 de marzo de 1948 los demandantes adquirieron la propiedad, la Ley de Alquileres Razonables—núm. 464 de 25 de abril de 1946 ((1) pág. 1327)—disponía en su artículo 12, entre otras cosas que "Mientras el inquilino pague el alquiler básico o el alquiler razonable fijado por el Administrador, según fuera el caso, no podrá el propietario promover la acción de desahucio para recobrar la posesión... de una casa o edificación que se use para negocios... aunque haya expirado el término del contrato. A los efectos de ese artículo se entenderá renovado el contrato por los plazos que estipule el artículo 1471 del Código Civil(1) durante todo el tiempo que dure la emergencia a que se refiere esta ley." Sin embargo, como en tanto en cuanto ese artículo se aplica a los hechos de este caso el mismo fué declarado inconstitucional por la Corte de Apelaciones de los Estados Unidos para

---

(1) El artículo 1471 del Código Civil, ed. 1930, dispone:

"Si no se hubiese fijado plazo al arrendamiento, se entiende hecho por años cuando se ha fijado un alquiler anual, por meses cuando es mensual, por días cuando es diario.  ...."

el Primer Circuito en el caso de *Rivera* v. *R. Cobián Chinea & Co.*, 181 F.2d 974, con fecha 19 de mayo de 1950, los demandantes no quedaban obligados por el mismo en forma alguna. En su consecuencia, la notificación verbal que ellos hicieron al demandado tres o cuatro días después de haber adquirido la propiedad tuvo el efecto de dar por terminado el contrato de arrendamiento que previamente existió entre el antiguo dueño de la propiedad y el demandado en este caso. Los demandantes podían así actuar de conformidad con lo provisto en el artículo 1461 del Código Civil, ed. 1930, que dispone que "El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta...".

No fué esa, sin embargo, la única notificación que los demandantes hicieron al demandado solicitando el desalojo de la propiedad. De los autos aparece un escrito intitulado "Notificación y Requerimiento" dirigido por ellos por correo certificado al demandado en 4 de mayo de 1948, notificando a éste que dan "por terminado el arrendamiento que de la mitad de dicha casa descrita tenía usted con su anterior dueño, a partir de esta notificación y requerimiento y se le concede a usted hasta el 31 del corriente mes de mayo de 1948, para que se sirva desalojar y poner a disposición de sus actuales dueños la mitad de dicha casa que usted viene ocupando." (²)

Si bien el requerimiento por escrito hecho por los demandantes al demandado lo fué diez días antes de empezar a regir la Ley núm. 201 de 14 de mayo de 1948 (págs. 575, 581), que enmendó el artículo 12-A de la Ley núm. 464 de 1946, (³)

---

(²) De los autos además se desprende que en 4 de mayo de 1948 los demandantes también escribieron al Administrador de Inquilinato informándole haber adquirido la propiedad objeto del desahucio y solicitando que la misma fuera retirada del comercio de alquileres, y que el Administrador les contestó que no era necesario un permiso de esa oficina para retirar una casa de tal mercado.

(³) El artículo 12-A provee en lo esencial que: "El arrendador podrá negar la prórroga del contrato de arrendamiento y en su consecuencia promover la acción de desahucio... (7) Por necesitar para sí, de buena fe el local de comercio o negocio. Para que prospere esta excepción será nece-

ello no significaba, sin embargo, que al empezar a regir la citada ley enmendatoria los demandantes tuvieran que requerir nuevamente por escrito y de manera fehaciente al demandado para que desalojara el local. Ya éste tenía pleno conocimiento de que los demandantes habían adquirido la propiedad y de que el deseo de ellos era que les desalojara la misma.[4] Conforme dijimos en *Fajardo* v. *Tribunal de Distrito*, 69 D.P.R. 476, 481, "En materia de interpretación de leyes el objeto primordial no es conseguir un objetivo arbitrario preconcebido, sino dar efecto al propósito del legislador." En este caso el propósito legislativo quedó enteramente cumplido, puesto que como cuestión de hecho el demandado fué requerido por escrito del deseo de los demandantes de que desalojara el local. Cf. *Pérez* v. *Tribunal de Distrito*, 70 D.P.R. 656, 663.

▪ Tampoco creemos que hubiera novación del contrato. El tribunal inferior no dió crédito a la prueba del demandado al efecto de que él cedió a los demandantes una de las habitaciones que ocupaba y de que éstos le cedieron un anexo que construyeron con la aquiescencia de él, aproximadamente un año antes de radicarse la demanda. A este respecto el tribunal a quo concluyó que los demandantes mera-

---

sario que *concurran* las condiciones fijadas a continuación: (*a*) Que el arrendador haya adquirido la propiedad con anterioridad al 17 de julio de 1947 (debe ser 1946) fecha de vigencia de la Ley de Alquileres Razonables en cuanto a locales comerciales y de negocio, y que el local hubiera estado arrendado por plazo fijo y ya hubiera vencido el término del arrendamiento (sobre la anterior disposición las partes no han levantado ni discutido cuestión alguna)... (*e*) El arrendador deberá notificar por escrito en forma fehaciente al inquilino afectado la necesidad en que se halla de ocupar para sí el local, y le requerirá para que desaloje el mismo, todo ello con seis meses de antelación, por lo menos, a la fecha en que el inquilino reciba la notificación de desalojo." (Bastardillas y entre paréntesis nuestros.)

[4] El hecho de que en el requerimiento se diera al demandado tan sólo un término de veintisiete días para desalojar la propiedad no altera la situación, toda vez que la demanda no fué radicada hasta mucho después y el desalojo no tendría nunca lugar antes de los seis meses del requerimiento. Véase el artículo 12-A 7(*e*) de la Ley 464 supra, según fué enmendada en 1948.

mente habían construído de cemento una división de zinc que existía en el patio del edificio y que el demandado ocupó siempre el mismo espacio. de local.   Bajo tales circunstancias no vemos cómo puede alegarse con ʻéxito la novación del contrato. (⁵)

■■ Para que surja la tácita reconducción es indispensable que exista un contrato de arrendamiento y que vencido el mismo el arrendatario continúe en posesión con el consentimiento del arrendador por un período de quince días.   Artículo 1456 del Código Civil, edición 1930; (⁶) *León Parra* v. *Gerardino*, 58 D.P.R. 489; *Besosa* v. *Tribunal de Distrito*, 68 D.P.R. 32.   No existiendo en este caso contrato de arrendamiento ni expreso ni implícito entre los demandantes y el demandado, no vemos cómo podía surgir la tácita reconducción. (⁷)

■ Además, prorrogación del contrato tampoco hubo.   Si bien de acuerdo con el artículo 12 de la Ley núm. 464 de 1946, supra, según fué enmendado por la Ley núm. 201 de 1948, "sea cual fuere la fecha de su edificación u ocupación y tanto en las viviendas como en los locales de negocio, aunque cambie el dueño o el titular arrendador, llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario", sin embargo el

---

(⁵) Según el artículo 1157 del Código Civil, ed. 1930, que trata de la novación, "Las obligaciones pueden modificarse: (1) Variando su objeto o sus condiciones principales.   (2) Substituyendo la persona del deudor. (3) Subrogando a un tercero en los derechos del acreedor."

(⁶) El ̇artículo 1456 del Código Civil, ed. 1930, reza así:

"Si al terminar el contrato permanece el arrendatario disfrutando quince días de la cosa arrendada con aquiescencia del arrendador, se entiende que hay tácita reconducción por el tiempo que establecen los artículos 1467 y 1471, a menos que haya precedido requerimiento."

(⁷) Como se ha visto, los demandantes notificaron verbalmente al demandado que debía desalojar la propiedad, cosa que para aquel entonces podía hacerse en esa forma de acuerdo con la ley.   Además, en 4 de mayo de 1948 notificaron por escrito al demandado que daban "por terminado el arrendamiento que de la mitad de dicha casa descrita tenía usted con su anterior dueño.ʺ

artículo 12-A de la misma ley establece como excepción que "el arrendador podrá negar la prórroga del contrato de arrendamiento" en ciertos casos que se especifican. Eso fué precisamente lo que aquí ocurrió, es decir los nuevos adquirentes se negaron a prorrogar el contrato de arrendamiento preexistente al solicitar del demandado el desalojo del local.

■ Cierto es que el requerimiento escrito fué dirigido al demandado en 4 de mayo de 1948 y que no fué hasta el 31 de mayo de 1950, o sea poco más de dos años después, que se radicó la demanda. También es verdad que durante todo ese tiempo los demandantes percibieron del demandado la suma de $15.75. Sin embargo, el recibo de esa cantidad mensualmente no hizo surgir un contrato de arrendamiento implícito entre los demandantes y el demandado. Aquéllos tenían sin duda derecho a que se les pagara por el uso de la propiedad y su propósito claro fué, desde el momento en que adquirieron la misma, que el demandado desalojara el local, dando así por terminado el contrato de arrendamiento existente con el anterior dueño. *Vélez* v. *San Miguel*, 68 D.P.R. 575; *Vidal* v. *Corte*, 71 D.P.R. 582.

■ El tribunal inferior claramente tenía jurisdicción para conocer del caso. Se trataba de un desahucio por detentación y los mismos han de verse siempre ante el Tribunal de Distrito. *Miranda* v. *Jarabo*, 64 D.P.R. 898; *Vidal* v. *Mason*, 68 D.P.R. 600; *Díaz* v. *Morales*, 71 D.P.R. 692.

■ No obstante, fué un error del tribunal sentenciador ordenar el desalojo del demandado "dentro de los veinte días contados desde la fecha en que quede firme esta sentencia". Según la Ley núm. 24 de 21 de agosto de 1948, Ses. Ext., pág. 239, "si la demanda se basare en cualesquiera de las causas contenidas en los inciso 6 al 8, inclusive, del artículo 12-A... el lanzamiento se decretará noventa días después de ser firme la sentencia." Como en este caso la demanda se basó en la causal contenida en el inciso 7 del artículo 12-A de la ley, el lanzamiento no debe tener lugar antes de los noventa días

de la fecha en que fuere firme la sentencia. Debe modificarse la sentencia del tribunal inferior a este respecto.

▮ También se queja el apelante de que se le condenara a pagar la suma de $300 por concepto de honorarios de abogado. Respecto a este particular bastará indicar que reiteradamente hemos resuelto que la condena en honorarios de abogado es discrecional en el tribunal sentenciador y que no creemos que en este caso, tomando en consideración todas las circunstancias, dicho tribunal abusara de su discreción al condenar al demandado al pago de los mismos ni al fijarlos en la cuantía mencionada. Véanse *Collazo* v. *Conesa*, 70 D.P.R. 155; *Cerra* v. *Motta*, 70 D.P.R. 861; *Santiago* v. *González*, 71 D.P. R. 942.

*Debe modificarse la sentencia apelada en el sentido de decretar el lanzamiento del demandado noventa días después de recibirse el mandato en el tribunal inferior y así modificada confirmarse.*

Opinión disidente emitida por el Juez Presidente Señor Todd, Jr.

Por los motivos expresados en mis opiniones disidentes en los casos de *Vélez* v. *San Miguel*, 68 D.P.R. 575, 585 y *Vidal* v. *Corte*, 71 D.P.R. 582, 590,([1]) de nuevo disiento en el presente.

En el de *Vélez* v. *San Miguel*, supra, se aceptaron por el demandante los cánones de arrendamiento por sólo dos meses y se resolvió que no había habido una renovación del contrato. En el de *Vidal* v. *Corte*, supra, se aceptaron por el demandante los cánones de arrendamiento durante diez meses antes de interponer la demanda, es decir, cuatro meses más después de expirar los seis meses de la notificación que exige el artículo 12-A de la Ley de Alquileres Razonables y se resolvió que la demora era "claramente explicable". Al disentir dije: "Bajo este razonamiento *si un demandante continúa percibiendo los cánones de arrendamiento durante un año o dos*, después de expirados los seis meses, *y expone*

---

([1]) También disentí, sin opinión, en el de *Díaz* v. *Morales*, 71 D.P.R. 692.

*razones que se consideran 'claramente explicables' para demora, sean o no razones legales* siempre que el demandante creyera que cumplía con su deber, *presumo que también se resolverá que no hubo prórroga del arrendamiento.* ..."
(Bastardillas nuestras.)

En efecto, en el presente caso no obstante haberse hecho por los demandantes la notificación al demandado el 4 de mayo de 1948, los demandantes continuaron percibiendo los cánones de arrendamiento y no fué hasta más de dos años después, o sea el 31 de mayo de 1950 que interpusieron la demanda de desahucio por detentación en el tribunal de distrito, con el agravante de que no expusieron razones de clase alguna que puedan considerarse "claramente explicables" para tal demora. Creo que ni aun la doctrina establecida en *Vélez* v. *San Miguel,* supra, y ratificada en los casos posteriores, es aplicable a un caso como el de autos en que un demandante, sin explicación de clase alguna, continúa cobrando y percibiendo los cánones de arrendamiento durante el tiempo ilimitado que a él le convenga para entonces interponer una demanda de desahucio por detentación. ¿Detentador un demandado que ha pagado los cánones de arrendamiento durante más de dos años? La mejor contestación a esta pregunta puede encontrarse en las citas de autoridades y jurisprudencia contenidas en mi opinión disidente en el caso de *Vélez* v. *San Miguel,* supra.

Considero que el tribunal inferior carecía de jurisdicción para conocer del caso y que la sentencia debe ser revocada.