BERNARDINO GONZÁLEZ, demandante, apelado y apelante, *v.* JOSÉ A. AGOSTINI y la UNITED STATES CASUALTY COMPANY, demandados, apelantes y apelados.

Número 11519.

*Sometido:* 2 de abril de 1956.    *Resuelto:* 28 de junio de 1956.

*Germán Rieckehoff* y *Luis Blanco Lugo,* abogados, respectivamente, de los demandados, apelantes y apelados; *Wilfrido Roberts* y *José L. Feliú Pesquera,* abogados del demandante, apelado y apelante.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Bernardino González interpuso demanda ante el Tribunal Superior contra José A. Agostini y United States Casualty Company, en reclamación de daños y perjuicios por alegados vicios en la construcción de dos edificios y falta a las condiciones de los contratos.

En la demanda se exponen dos causas de acción. En la primera se alega que el día 14 de septiembre de 1950 el demandante y el demandado Agostini otorgaron un contrato en virtud del cual el segundo se obligó a construir para el primero un edificio comercial y residencial en Bayamón,

Puerto Rico, por precio de $19,695, dentro del término de 150 días a partir de la fecha del contrato y de conformidad con el plano y especificaciones fijadas por el demandante; que a mediados del mes de mayo de 1951 el demandado recibió del demandante el pago final del precio acordado por la construcción del referido edificio, entregando éste al demandante; que el demandado no había cumplido con las obligaciones del contrato ya que no construyó el edificio según el plano y las especificaciones acordadas, y que la construcción adolecía de varios defectos y deficiencias, los cuales se detallan; que a consecuencia de ello el demandante ha sufrido daños calculados en $22,800. Se alega además, que la codemandada United States Casualty Co. celebró un contrato con el demandado obligándose a responder al demandante de todos los daños y perjuicios que éste sufriera como consecuencia de cualquier infracción al contrato de construcción ya mencionado.

En la segunda causa de acción se alega que el día 13 de junio de 1951, el demandante y el demandado Agostini celebraron un contrato en el cual éste se obligó a construir para aquél, por el precio de $19,000, otra edificación comercial y residencial contigua al edificio construído bajo el primer contrato; que dicha edificación se haría de conformidad con el plano y especificaciones fijados por el demandante dentro del término de 150 días a partir de la fecha del contrato. Se sigue alegando que el 31 de diciembre de 1951, el demandado recibió el pago final del precio acordado, entregando éste la edificación al demandante; que el demandado no construyó el edificio según el plano y especificaciones acordados, adoleciendo de defectos y deficiencias que le han ocasionado daños al demandante, los cuales se detallan. Finalmente alega que la codemandada United States Casualty Co. otorgó otro contrato de garantía similar al mencionado en la primera causa de acción.

Después de varias mociones e incidentes preliminares, los demandados radicaron una contestación enmendada ad-

mitiendo el otorgamiento de ambos contratos de construcción así como los de fianza, y negaron en general los otros hechos esenciales de la demanda, además de levantar varias defensas, entre ellas, la de cosa juzgada en cuanto a la segunda causa de acción. Por su parte la demandada United States Casualty Co. presentó una reclamación recíproca contra el codemandado Agostini alegando que en virtud de un convenio de exoneración, éste se obligó a satisfacerle cualquier suma que ella desembolsara con motivo del otorgamiento de las fianzas. Agostini aceptó este hecho.

Después de celebrarse un juicio en los méritos, el tribunal a quo dictó sentencia condenando a los demandados a pagar solidariamente al demandante en concepto de daños, la suma total de $5,668, más las costas y $400 para honorarios de abogado. También condenó al demandado Agostini a pagar a la compañía aseguradora codemandada, cualquier suma que por virtud de esta sentencia, satisfaga al demandante.

Ambas partes apelaron. Consideraremos en primer lugar, el recurso interpuesto por los demandados.

Los demandados-apelantes imputan al tribunal sentenciador haber cometido error al desestimar su defensa de cosa juzgada. El fundamento para tal desestimación fué que los demandados no levantaron oportunamente la referida defensa, bien en la primera contestación a la demanda, o ya en las defensas preliminares levantadas mediante moción.

No nos detendremos a examinar esta cuestión porque de todos modos, la defensa de cosa juzgada, aun cuando hubiera sido levantada oportunamente, no procedía. Veamos por qué. Esta defensa se interpuso contra la segunda causa de acción, la que según hemos dicho antes, surgió del segundo contrato celebrado entre las partes el 13 de junio de 1951. El pleito anterior alegado como base para la defensa de cosa juzgada, fué uno interpuesto ante la Sección de Bayamón del anterior Tribunal de Distrito, por Agostini contra González en reclamación de cierta deuda cuyo origen era la eje-

cución del primer contrato celebrado entre ellos el día 14 de septiembre de 1950. La primera causa de acción en el presente litigio se funda en ese primer contrato pero la defensa de cosa juzgada no se interpuso contra esa primera causa de acción y sí contra la segunda. Pero como ambas causas de acción tienen su origen en distintos contratos, González no estaba compelido por la Regla 13(a) de las de Enjuiciamiento Civil, a reclamar en el pleito de Bayamón, mediante reconvención, los daños y perjuicios que reclama en este pleito en su segunda causa de acción, aunque bajo el inciso (b) de dicha Regla le era permisible hacerlo.[1] Barron y Holtzoff, págs. 795, 796, 805 y 806; *Williams* v. *Robinson*, 1 F.R.D. 211; *Big Cola Corp.* v. *World Bottling Co.*, 134 F.2d 718; *Cf. Sastre* v. *Cabrera*, 75 D.P.R. 1. El error no fué cometido.

■ En el segundo señalamiento los demandados-apelantes sostienen que el tribunal a quo cometió error al no resolver que de acuerdo con el primer contrato la reclamación del demandante había prescrito.

En el primer contrato las partes convinieron:

"Para garantizar el fiel cumplimiento de este contrato, el contratista entregará al propietario una fianza, 'Performance Bond', por el valor total de este contrato.

"Esta fianza conllevará la siguiente garantía por parte del contratista: El contratista garantiza la obra a construirse por el contrato, cualquier defecto sea de materiales o de mano de obra y a requerimiento del propietario remediará cualquier

---

[1] La Regla 13 en sus incisos (a) y (b) dispone:

"(a) *Reconvenciones Compulsorias.*—Una alegación hará constar por vía de reconvención cualquier reclamación que no esté envuelta en una acción pendiente y que el que hace la alegación tenga contra cualquier parte contraria al tiempo de presentarla, si surge de la transacción o evento que motivó la reclamación de la parte contraria y no requiere para su adjudicación la presencia de terceros sobre quienes la corte no puede adquirir jurisdicción.

"(b) *Reconvenciones Permitidas.*—En una alegación se podrá exponer como reconvención cualquier reclamación contra una parte contraria, que no surja de la transacción o evento que motivó la reclamación de dicha parte."

falta que se desarrolle en la obra si dicha falta se debiera a defectos de materiales suplidos por el contratista o mano de obra suplida por el contratista, sin costo alguno para el propietario, por un término de treinta días después de ser entregado." (T.A. pág. 21.)

El edificio construído de acuerdo con dicho contrato fué entregado al demandante el día 15 de mayo de 1950 [2] y la demanda en este caso se interpuso el día 24 de noviembre de 1950, o sea, cuando ya había transcurrido en exceso el plazo convenido de 30 días. Sin embargo, el art. 1483 de nuestro Código Civil (ed. 1930), 31 L.P.R.A., sec. 4124, dispone:

"Artículo 1483.—El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

"Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años."

El tribunal sentenciador resolvió, que el plazo que regía era el fijado por el Código y no el convenido por las partes.

No tenemos duda de que el plazo de garantía fijado por el art. 1483 de nuestro Código Civil afecta el interés y seguridad públicos. En consecuencia, una renuncia a ese plazo es contraria al orden público y, por ende, nula. Comentando el citado artículo en su equivalente del Código Civil Español, Scaevola apunta:

"¿Podrá pactarse la liberación del plazo de garantía?

"El primer punto conviene concretarlo más: El arquitecto y el empresario, ¿prestarán el plazo de garantía si, habiendo advertido al dueño el vicio del suelo, la mala calidad de los materiales en el caso de que éste los suministrara, o la inconveniencia y peligro de modificar los planos de la construcción, cedieran a las instancias de aquél? Apunta el comentarista Manresa, muy discretamente, que, en su sentir, 'el arquitecto

---

[2] La prueba demuestra que el demandante-apelado no recibió los edificios a plena y total satisfacción.

no se libra de responsabilidad si la causa de la ruina es el vicio del suelo, aunque demuestre que dió oportuno aviso de este vicio al propietario, pues su deber en este caso, no es seguir las indicaciones de éste, sino resistirse a hacer la obra, porque así lo exige el interés público'. Es el mismo argumento que, combatiendo a Duranton y Taulier, aducen la mayoría de los exégetas del Código francés, y con el cual estamos en absoluto conformes.

"Si el problema anterior toca en el interés y seguridad públicos, el segundo de los que hemos enunciado confina con el interés privado. ¿Podrán empresario o arquitecto y dueño pactar la renuncia y liberación consiguiente del pacto de garantía de suerte que si dentro de los diez años pereciese el edificio o fuese mandado demoler por ostensibles señales de ruina, no deban aquéllos indemnización ninguna al dueño? El artículo 637 del Código alemán dice que el pacto por el cual se suprima o restrinja la obligación del contratista de responder de los defectos de la obra, no surtirá efecto cuando el contratista los disimule dolosamente. El antecedente es muy interesante; ¿pero es adaptable a nuestro Derecho civil? Es dudoso. Por lo pronto, si el plazo de garantía de una construcción por los vicios que en dicho plazo pudieran revelarse, es una cautela similar al saneamiento en la compraventa, nótese que el mismo espíritu del artículo 637 del Código germano alienta en el 1.485 del Código español, puesto que autoriza el pacto de renuncia al saneamiento, siempre que el vendedor ignorase los vicios o defectos ocultos de lo vendido, porque si fuese sabedor de ellos, aquella renuncia se tendrá por no hecha. Luego, en tesis general, las cautelas pueden renunciarse, porque afectan sólo al interés privado. Contribuye en análogo sentido el principio de libertad estipulatoria, base dogmática de la contratación. (art. 1.255).

"¿Cuáles son las razones que arguyen en contrario? En nuestro sentir, las de que el pacto de renuncia al plazo de garantía, aunque confina, como hemos dicho, con el interés privado, no cae dentro de su área, y que la libertad de estipular está coartada por los fueros de la moral y el interés públicos. Si el pacto a que nos estamos refiriendo fuese válido por él resbalarían todas las complacencias de un arquitecto despreocupado para con un dueño codicioso, y la seguridad y el interés públicos quedarían faltos de la garantía que implica la responsabilidad personal de un técnico director y de un empresario

constructor. Por esta consideración, pensamos que el pacto por el cual el dueño renuncia al plazo de garantía es inmoral, contrario al público interés, y, por consiguiente, nulo, pudiendo ejercitar la acción de nulidad los obligados principal o subsidiariamente en virtud del contrato de obra." (24 Scaevola, págs. 109 a 111.)

Manresa sostiene que en la construcción de edificios está envuelto el interés público. Por eso opina que el arquitecto no se libra de responsabilidad si la causa de la ruina es el vicio del suelo, aunque demuestre que dió aviso oportuno de ese vicio al propietario pues su deber en tal caso no es seguir las indicaciones de éste, sino resistirse a hacer la obra porque el interés público así lo exige. 10 Manresa, 921, 922. Puig Peña, Derecho Civil, Tomo IV, Vol. II, pág. 307. Véase sobre este punto, Guaroa Velázquez, "Responsabilidad por los defectos en las Edificaciones", 20 Rev. Jur. de la U.P.R. 13. Los autores franceses comentando un precepto similar del Código Civil de aquel país, expresan el mismo criterio. Laurent, advierte que la responsabilidad del arquitecto está fundada en una culpa que no sólo interesa al propietario sino que compromete la existencia del edificio y por ende la seguridad de las personas. "En este sentido— dice—la responsabilidad del arquitecto es de interés general. Síguese de esto que las partes contratantes no pueden derogar la responsabilidad del arquitecto: primero, nadie puede estipular que no responderá de su culpa, siendo semejante convención contraria a las buenas costumbres, y las partes contratantes no pueden, en sus convenciones particulares, derogar las leyes que son de interés público... Este mismo principio se aplica a los vicios de construcción." XXVI Laurent, Derecho Civil Francés, págs. 64 y 65. Para Colin y Capitant hay una razón de orden público para exigir de los arquitectos y contratistas la *peritia artis*, y es la de que, si construyen mal o defectuosamente, sus torpezas son tan funestas para la seguridad de sus clientes como para el público. IV Colin y Capitant, Derecho Civil, pág. 343. Planiol y Ripert sostienen también el criterio de que el plazo

de garantía que impone la ley al arquitecto o empresario es una medida de interés público y que la cláusula de no-garantía es nula. (³)

Consecuencia de lo dicho anteriormente es que en un contrato de obra, la renuncia al plazo decenal de garantía fijado por el art. 1483 del Código Civil, es nula y no libra de responsabilidad al contratista. Dicho plazo tampoco puede válidamente alterarse por las partes. La prestación por el contratista del plazo de garantía, *es típicamente una obligación legal,* según afirma Scaevola, y la que según hemos visto es irrenunciable por razones de orden público. Referente a edificios el artículo que comentamos contiene una excepción especial y concreta a la regla general de que la responsabilidad del arrendador se extingue contra la entrega de la cosa. "La razón del precepto es muy clara. La entrega de la cosa y el examen que de ella se hace no son suficientes para suponer que el arrendatario tiene ocasión para conocer perfectamente todos los vicios de que la cosa pueda adolecer. Antes, por el contrario, lo probable será que esos defectos no sean manifiestos, y que sólo con el transcurso del tiempo puedan ser apreciados. Arrancando esta consideración de la misma naturaleza de las cosas, lo prudente y lo justo es el fijar un período de tiempo durante el cual la responsabilidad del arrendador pueda hacerse efectiva y no entender que el hecho de la aceptación implica renuncia, por parte del arrendatario, de acciones que en ese momento no sabe si tendrá motivos para ejercer. " (10 Manresa 919, 920).

"El Código", comenta Scaevola, "establece una distinción muy interesante por razón de los vicios ocultos de las cosas ejecutadas mediante el contrato de obra. Si se trata de edificaciones, conjunto constructivo complejo y de muy difícil apreciación, señala un plazo de garantía, diez años, cuyo lapso es suficiente, en opinión de los técnicos, para que dichos vicios se revelen externamente y pueda inferirse la inten-

---

(³) 11 Planiol y Ripert, 194 y 207.

sidad del daño que para la construcción denuncian, en todo o en alguna de sus partes. Cuando no se trata de edificaciones, es decir, cuando el contrato se refiere a cosas muebles, la ley civil no otorga plazo ninguno de garantía." (24 Scaevola 90.)

Este mismo comentarista considera que el plazo de garantía "significa la *prueba experimental del tiempo*, porque se presume por fundamentos técnicos, que en diez años han de haberse revelado todos los vicios ocultos de una construcción que pudieran afectar a su subsistencia." (Scaevola, ob. cit., 103.) Véase además, 4 Falcón, Código Civil, 280; 9 Martínez Ruiz, Código Civil, 633.

Los autores franceses aducen como razones del indicado precepto, más o menos, las mismas apuntadas por los comentaristas españoles.[4]

Ahora bien, el art. 1483 habla de *vicios de la construcción* sin distinguir entre los vicios ocultos y aquéllos que son apreciables a simple vista o por el examen que suele hacerse ordinariamente. ¿Cabe esa distinción a los fines de determinar cuáles están cubiertos por el plazo legal de garantía? Creemos que sí. La propia razón del precepto lo justifica. No abundan las opiniones de los comentaristas españoles sobre esta cuestión. Un gran número de ellos guarda silencio o no discute el problema.[5] Aquellos que lo discuten, se deciden por la distinción. Valverde, comentando el artículo equivalente del Código Civil Español, dice:

---

[4] Colin y Capitant, ob. cit., págs. 340 y 341; Planiol y Ripert, ob. cit., págs. 192 y 193. Laurent, ob. cit., págs. 68 y 69. "El artículo 1.792 lo consideró el Consejo de Estado como una excepción restringida a los edificios, justificándolo así estas palabras de Berenguer: 'Es fácilmente apreciable si un mueble ha sido construído como debe serlo, basta su mera inspección; así, pues, a contar de su entrega y recepción el constructor queda libre de toda responsabilidad; pero no sucede lo mismo con un edificio, porque éste puede reunir todas las apariencias de la solidez y, no obstante, estar afectado por vicios ocultos que produzcan su derrumbamiento en un cierto lapso de tiempo. El arquitecto debe, pues, responder durante un plazo, lo bastante amplio para que por sí mismo acredite la solidez de la construcción.' " (24 Scaevola, pág. 95.)

[5] Entre éstos se encuentran Sánchez Román, Castán, De Diego, Puig Peña, Falcón, Martínez Ruiz y De Buen.

520

"Fijan estos artículos las responsabilidades que del contrato se derivan, y bueno es hacer constar, que si por regla general cesa la responsabilidad del arrendador una vez entregada la obra sin reclamación alguna, creemos con los intérpretes, que si los defectos no son apreciables a simple vista, ni por el examen que suele hacerse ordinariamente, no debe entenderse que el arrendatario renuncia al ejercicio de su acción (que según dicen algunos es personal), y durará lo que éstas duran, según el art. 1964." (Valverde, Tomo III, Tratado de Derecho Civil Español, pág. 598.)

· Ya conocemos la opinión de Scaevola, por los comentarios que hemos citado en esta opinión. Parece que Manresa es del mismo criterio. Así se infiere de sus comentarios a los artículos 1589, 1590 y 1591 del Código Civil Español.[6] Véase además, Nart, "Contrato de Obra y Empresa", Rev. de Derecho Privado (1951), págs. 814 y sigtes.

Los autores franceses, y la jurisprudencia de su país, sostienen que para que el arquitecto o empresario sean responsables dentro del plazo de garantía fijado por la ley es condición que se trate de vicios ocultos. A juicio de algunos de ellos, la existencia de vicios aparentes que el propietario no ha podido ignorar en el momento de la recepción de la obra no implica responsabilidad alguna para el arquitecto o empresario. "Hay que presumir que una obra recibida sin reparos no tenía vicios aparentes."[7] Si los vicios

---

[6] Dice este autor:

"Del estudio de los artículos 1.589 y 1.590 parece deducirse que la responsabilidad del arrendador, cesa una vez entregada la obra, salvo el caso especial previsto en el artículo 1.591.

"Esta es, en efecto, la regla general, porque, como dice Laurent, si el arrendatario después de examinar el trabajo acepta la obra sin hacer reclamación alguna al arrendador, parece como que este hecho implica la renuncia a reclamar con posterioridad.

"Pero puede ocurrir, como hace notar el mismo autor, que los defectos que la cosa tenga no sean apreciables a la simple vista, ni por el examen que ordinariamente suela hacerse de la clase de obras que se trate, y, en este caso, justo y moral es que el arrendador responda de tales defectos que sólo más adelante pueden ser apreciados. No debe entenderse que el arrendatario renuncia al ejercicio de su acción derivada de un hecho cuya existencia desconoce." (10 Manresa, págs. 918 y 919.)

[7] 11 Planiol-Ripert, ob. cit., pág. 200.

fueran aparentes de modo que el que examina y recibe las obras pudo reconocerlos, no se está ya en el caso del artículo que fija el plazo de garantía sino que se vuelve a la regla común según la cual la recepción de la obra descarga al obrero de la responsabilidad. ([8])

La cuestión que discutimos tiene importancia en la decisión de este caso porque como se recordará, cuando el demandante recibió el edificio ya conocía los vicios de construcción que motivan esta reclamación de daños y perjuicios. Si la recepción se hubiera hecho a plena satisfacción o sin reservas, el contratista, conforme a la doctrina expuesta anteriormente, hubiera quedado libre de responsabilidad por los vicios manifiestos que eran conocidos por el propietario ya que dicha aceptación implicaba una renuncia a reclamar por tales vicios. No así en cuanto a los vicios ocultos. Pero según hemos visto, el demandante protestó de los vicios ostensibles que conocía e hizo la recepción del edificio sujeto a esa reserva. Ante esta situación, ¿cuál era el plazo que tenía para establecer su reclamación por los daños sufridos a causa de los vicios de construcción aparentes y conocidos por él? A nuestro juicio, el de 30 días convenido por las partes. El pacto fijando un término de 30 días para reclamar por los vicios aparentes no es contrario a la ley ni al orden público. Por su naturaleza, ese pacto regula los derechos e intereses privados del propietario y el contratista. Por consiguiente, debe sostenerse la validez del pacto en lo referente a los vicios aparentes. En cuanto a los vicios ocultos, el pacto es nulo. ([9])

([8]) XXVI Laurent, ob. cit., pág. 69.

([9]) En la garantía contractual prestada por el contratista, éste se obligó a remediar cualquier defecto proveniente de los materiales o mano de obra suplidos por él sin costo alguno para el propietario, por un término de treinta días después de ser entregado el edificio. Su garantía por tanto, expiraba al vencerse los treinta días de entregado el edificio. En su consecuencia, expirado el término de garantía, el propietario carecía de acción para reclamar daños por los vicios aparentes. En cuanto a los vicios ocultos, el pacto contractual de garantía es nulo, y el demandante, podrá, de arruinarse el edificio por vicios ocultos de la construcción, reclamar los daños dentro del plazo decenal fijado por la ley.

El tribunal a quo cometió error al no resolver que de acuerdo con el primer contrato, la reclamación del demandante por los defectos de construcción conocidos por él al momento de recibir el edificio, estaba prescrita.

■ El tercer señalamiento es al efecto de que el tribunal sentenciador cometió error al conceder indemnización al demandante por la pérdida de uso del local del primer piso.

Este error descansa en una premisa equivocada. El primer edificio fué entregado al demandante el día 15 de mayo de 1951, o sea, noventa y tres días en exceso del término fijado en el contrato para ello. El tribunal a quo concedió al demandante la suma de $883.50 como indemnización por la renta que había dejado de percibir durante esos noventa y tres días.[10]   Por el tiempo que el demandado ocupó el local comercial del primer edificio para guardar materiales de construcción después del día 15 de mayo de 1951, el tribunal no concedió indemnización alguna al demandante ya que estimó que el demandado ocupaba dicho local con el consentimiento del demandante.   El error no fué cometido.

Pasamos ahora a considerar la apelación interpuesta por el demandante.

■ Se imputa al tribunal sentenciador haber cometido error (1) al no concederle por el descuadre del edificio una indemnización de $18,000;  (2) al no concederle la partida de $1,000 en cada una de las causas de acción, para corregir los aleros y ampliarlos al ancho especificado en el contrato;  (3) al no conceder las partidas reclamadas por defectos del drenaje en la losa del techo y en los pisos de los balcones.

---

[10] El tribunal a quo formuló la siguiente conclusión de hecho:
"La prueba demuestra que el primer edificio fué entregado 243 días después de firmarse el contrato, o sea 93 días en exceso del término de 150 días especificados en el contrato. Como de acuerdo con la prueba el edificio ha rentado siempre $285 mensuales, el demandante se vió privado, con el retraso de 93 días, de recibir la suma de $883.50 de rentas y asímismo se vió privado de recibir la suma de $484.50 de renta de la segunda parte del edificio, a razón de $285 mensuales por razón de la tardanza de 51 días en exceso del término de 150 días especificados en el contrato para llevar a cabo la construcción." (T. A., págs. 48 y 49.)

Habiendo ya resuelto que la reclamación de estas partidas estaba prescrita, la discusión de estos errores resulta ilusoria.

■ El cuarto error se dirige contra la suficiencia de la cuantía concedida para honorarios de abogado. Éstos fueron fijados en $400. No se nos ha convencido de que el tribunal a quo abusara de su discreción al fijar la mencionada cuantía, ni que ésta sea insuficiente, por lo que no la alteraremos en apelación. Véase *Torres* v. *Biaggi*, 72 D.P.R. 869, 877; *Collazo* v. *Conesa*, 70 D.P.R. 155, 165; *Cf. Soto* v. *Lugo*, 76 D.P.R. 444. El error, por tanto, no fué cometido.

*Se modifica la sentencia apelada, eliminándose de la misma las partidas de $4,000 concedida por el descuadre del edificio, la de $100 concedida por el cambio del alambre eléctrico y la de $200 concedida por los defectos de la escalera y del drenaje, y así modificada, se confirma.*